HUNTER et al. v. STACEY.—141 S. W. (2d) 921.

Middle Section.   March 16, 1940.

Certiorari Denied by Supreme Court, June 29, 1940.

Walker & Hooker, of Nashville, for Paul Stacey.
John M. Cate, of Nashville, for Ralph W. Hunter, and others.

FELTS, J.   Paul Stacey, a minor, was struck at a street crossing in Nashville by an automobile driven by Mrs. Reba Hunter and

owned by her husband, Ralph W. Hunter; and by next friend he sued them to recover for the injuries thus inflicted. The negligence charged was that Mrs. Hunter failed to keep a lookout, ran down plaintiff and a companion, and hurried away without stopping, leaving them lying in the middle of the street, and that she violated a city ordinance which required her to "keep as near the right-hand curb as possible," and a state statute which made it her duty to yield the right-of-way to plaintiff at the crossing. Code, sec. 2687 (c). Defendants pleaded not guilty.

The jury returned a verdict for plaintiff for $10,000. The trial judge suggested a remittitur of $1500, and judgment was entered for plaintiff against defendants for $8,500. Defendants appealed in error; but on the day before they perfected their appeal their insurer paid into the circuit court $5,000, together with interest to date and all the court costs, which is said to be the extent of its liability.

Defendants did not move for a directed verdict; but they insist that a new trial should be granted because there is no evidence of any negligence on the part of Mrs. Hunter, and because plaintiff was guilty of contributory negligence as a matter of law, and the verdict is excessive and so excessive as to indicate passion, prejudice, and caprice.

The accident occurred shortly after one o'clock on the morning of December 1, 1938, at the intersection of Twenty-first Avenue and Church Street. Mrs. Hunter had been playing bridge that night at the Noel Hotel. She had left the hotel about one o'clock to go to her home in the Belle Meade Apartments, and was alone in her husband's car, a maroon colored Ford, driving westerly along Church Street. Plaintiff, a school boy seventeen years of age, and Richard Robinette, another boy about the same age, had attended a dance given by a high school sorority at the Women's Club located on Louise Avenue; and these two boys had walked to the northwest corner of Church Street and Twenty-first Avenue, and were walking over this crossing, going south across Church Street toward the southwest corner, where they intended to wait for an in-bound or east-bound street car, their homes being in East Nashville.

At this intersection Church Street forks, the left or south fork being called Elliston Place and the right or north fork being Church Street, which bends to the north and runs into Twenty-second Avenue. Two street car tracks are laid in Church Street, the north track being for out-bound cars and the south track being for in-bound cars. At this intersection Church Street is wide but its exact width is not shown. As stated, Mrs. Hunter was driving west along Church Street and she intended to continue on along Elliston Place en route to her home.

Plaintiff's testimony is that before he and Robinette stepped off the pavement on the north side of Church Street he looked east and west along Church Street and saw no automobile coming; that they walked over the crossing until they got beyond the center of Church Street, and he was looking to his right or west for in-bound traffic; that about this time he saw a light behind him and turned his head in time to see the automobile approaching fifty or sixty miles an hour and it "cut in to us;" that before they had time to take more than about "a step" the car struck them and rolled or dragged them a great distance; that he and Robinette both fell in the street, he falling on top of Robinette; that the automobile continued on without stopping, leaving them lying in the street. Richard Robinette, who sustained a serious brain injury, was unable to recall anything as to the details of the accident.

A little later Edwin A. Hill and some companions in his automobile, who had also attended the dance, were coming east on Elliston Place, when Hill saw about twenty feet ahead of him what appeared to be a body or a person injured. He stopped his car, got out and found Stacey and Robinette lying in the street, both seemingly unconscious, Stacey lying on top of Robinette. They were lying about the middle of the in-bound or south street car track and were fifty or sixty feet beyond or west of the intersection of Twenty-first Avenue and Church Street. Between where they were lying and the north curb of Church Street (Mrs. Hunter's right side of the street) there was about thirty feet of clear space or room for two or three cars to pass. The evidence also is that the clothes of the boys were bloody, dirty and torn as if the bodies had been dragged or rolled in the street. Hill and his companions took Stacey to St. Thomas Hospital and another car, which had come up, took Robinette to the hospital.

Mrs. Hunter testified that it was very foggy and murky, and a white smoke was coming out of St. Thomas Hospital so that her vision was obscured. There were no traffic lights and she was driving "thirty miles an hour." She was familiar with the intersection of Twenty-first Avenue and Church Street. She said, "all at once I saw two men in front of me on the left-hand side of my car." She said she could not tell which way they were going, but when the smoke coming from the hospital passed away she saw "two men on the right side of my car." On cross-examination she stated the left fender of her car struck the two boys. She also admitted that she knew at the time that she had "struck them" or had "struck something." She stated that the reason she did not stop was that she had heard of some robberies and a murder having been committed in the vicinity and that she thought the persons she saw in the street might be intending to rob or harm her. She stated when she reached home she told her husband of the accident

and he told her to go to sleep and they would notify the authorities next morning. It appears, however, that they did not do this until after they had read a story in the morning paper about the accident in which it was stated that the police were looking for a "hit and run" driver of a maroon colored Ford, which was the description of the car she was driving.

There is abundant evidence to support the jury's finding that Mrs. Hunter was guilty of actionable negligence. The intersection where the accident occurred was within "a business or residence district." Code, sec. 2687(c), made it her duty to yield the right-of-way to plaintiff at this crossing. Also the ordinance of Nashville made it her duty "to keep conveniently near the curb" on her right side. Gouldener v. Brittain, 173 Tenn., 32, 114 S. W. (2d), 783. This ordinance is for the protection of pedestrians as well as vehicles; and this Code provision is for the protection of pedestrians. Violation of these duties by Mrs. Hunter was negligence per se. The evidence also warranted the inference that she was not keeping a proper lookout and was driving at a reckless rate of speed under the conditions she says existed.

Nor can we assent to defendants' insistence that the evidence showed plaintiff was guilty of contributory negligence as a matter of law. This insistence is rested upon plaintiff's statement that after looking both ways and seeing no traffic when he started to cross Church Street he did not look again toward the east until he saw the light behind him just before the car struck him. The "continuing duty to look," applicable at railroad crossings, is not applicable at street crossings; but it is a question for the jury whether the person crossing exercised ordinary care under the circumstances shown. Studer v. Plumlee, 130 Tenn., 517, 172 S. W., 305; Duling v. Burnett, 22 Tenn. App., 522, 533, 124 S. W. (2d), 294; Waller v. Morgan, 23 Tenn. App., 355, 133 S. W. (2d), 614, 616. So we think it was for the jury to say whether plaintiff was guilty of contributory negligence, and the verdict cannot be disturbed.

And we think the verdict is not excessive for the injuries shown. Plaintiff was knocked down and dragged or rolled for fifty or sixty feet in the street. He suffered a slight concussion or brain injury. His flesh and skin were torn on his head, knees, legs and other parts of his body. Both bones in his left leg were broken, the large bone being broken in several places, several pieces of bone being broken off the shaft and pushed into the flesh so that some of them were penetrating through the skin. He remained at the hospital for two or three weeks and was then confined in bed at home for some three or four weeks more. His injury happened on December 1, 1938, and the X-ray pictures, sent up with the record, show that at the time of the trial the broken bones had not reunited. During this period from December 1, 1938, until June 22, 1939, the

date of the trial, he had had to wear a cast on the leg; and during this period he suffered great physical pain and agony. The proof is that there will always be a stiffness in the knee joint and the left leg is three-fourths of an inch shorter than his right leg as a result of the injury; and that it will perhaps require another operation to get the bones to unite. The injuries in this case are almost as great as those in Power Packing Co. v. Borum, 8 Tenn. App., 162, 180, where a much larger verdict was upheld.

Defendants' assignments of error are overruled, the judgment of the circuit court is affirmed and judgment will be entered in this court in favor of plaintiff against defendants for $3,500, with interest thereon from August 6, 1938, the date of the $5,000 payment on the judgment by the insurer. The costs of the appeal are adjudged against defendants and the surety on their appeal bond.

Faw, P. J., and Crownover, J., concur.