## ZAMORA v. SHAPPLEY.—173 S. W. (2d) 721.*

Western Section.  December 13, 1941.

Petition for Certiorari denied by Supreme Court, April 4, 1942.

---

*This opinion should have appeared in Volume 26 but was inadvertently omitted.

Galloway & Galloway and James H. Hicks, all of Memphis, for plaintiff in error.

King, King & Laughlin and Thomas C. Farnsworth, all of Memphis, for defendant in error.

ANDERSON, J.   This action was brought by Mrs. Ramon Zamora, Administratrix of the estate of Thomas Maupin, deceased, against James A. Shappley, to recover damages for the alleged wrongful death of the plaintiff's intestate, who was fatally injured when he walked into the side of the defendant's automobile at the intersection of Union Avenue and Dudley Street in the City of Memphis.   At the conclusion of the plaintiff's evidence, the Judge sustained the defendant's motion for a directed verdict upon the ground that there was not only no material evidence to warrant a conclusion that the defendant was guilty of actionable negligence, but the undisputed evidence showed that the decedent's own negligence was the proximate cause of his injury and death.   A judgment was accordingly entered, dismissing the suit, and the plaintiff appealed in error.

By appropriate assignments of error, the plaintiff challenges the correctness of the view of the trial Julge with respect to both of the issues mentioned.   We find it necessary to consider only the conclusion reached with respect to the proximate contributory negligence of the decedent.   Hicks v. Herbert, 173 Tenn. 1, 113 S. W. (2d) 1197.

Our decision rests upon a theory of the facts with respect to which there was some material evidence when regarded in the light most favorable to the plaintiff.   That theory is as follows: Union Avenue runs east and west and carries four lanes of traffic separated by yellow lines marked on the pavement—two lines for westbound traffic and two for eastbound.   It is eighty feet wide from curb to curb.   From the north curb to the first yellow line is approximately twenty-four feet; from that point to the line in the center of the street is approximately sixteen

feet. Dudley Street runs north and south and intersects Union Avenue at right angles. It is forty feet in width from curb to curb.

The accident occurred about 6 o'clock p. m. on April 21, 1941. A ball game played in the neighborhood had just been completed and Dudley Street in the vicinity of the intersection was crowded with traffic, including pedestrians who had been attending the affair. On Union Avenue there was, in the language of the witnesses, "a continuous stream" of automobiles in all four traffic lanes, extending for two or three blocks in each direction, and traveling at an estimated distance of fifteen to thirty feet apart, and at a rate of speed of from twenty-five to thirty miles per hour, that rate being within the municipal speed limit as fixed by an ordinance of the city.

As it approached the intersection, the car operated by the defendant was traveling west at that rate in the line of traffic occupying the land adjacent to the line in the center of Union Avenue. Twenty-five or thirty feet ahead of him was another car traveling at about the same rate of speed but in the adjoining traffic lane to the north.

Quite a number of pedestrians leaving the ball game had come down the walkway on the west side of Dudley. All except deceased appear to have stopped, to await an opportune moment for crossing. Instead of doing as the others did, deceased stepped off of the curb, started across the street, with his hands in the pockets of a lumber jacket that he was wearing, eyes cast upon the ground, and without having looked to either his right or left. As he left the curb, the car in the northernmost lane of traffic was then at a distance of about twenty feet, and the defendant's car was, as stated, some twenty-five or thirty feet to the rear in the adjacent traffic lane. In

order to avoid striking the decedent, it was necessary for the first car—that is, the car in the northernmost lane—to swerve sharply to the right, which it did and succeeded in passing to the rear of the deceased, who, thereupon, to again use the language of a witness, "started back to the curb and must have changed his mind; he whirled around and ran and hit the other car on the side", that is, the defendant's car. In an effort to avoid the accident the defendant, upon observing the situation, swerved sharply to the left as far as the eastbound traffic would permit, at the same time applying his brakes. The front part of the car had passed the deceased when he ran into the side of the vehicle at or about the handle of the front door.

Now, as we say, the foregoing is that version of the facts finding some support in the evidence, regarded in the light most favorable to the plaintiff. Assuming it to be true, can it be said that there was any probability of reasonable minds disagreeing about the proposition that the deceased, in pursuing the course he did, failed to exercise ordinary care for his own safety, and that his omission in this regard was a proximate cause of his fatal injury? Hicks v. Herbert, 173 Tenn. 1, 113 S. W. (2d) 1197. As already said, the trial judge answered this question, "No", and so do we. These are the reasons:

The general rule in this State and elsewhere is, that one preparing to cross a public street is not under the absolute duty to look both ways and listen for approaching vehicles, as he would be if he were about to cross a railroad track; for he has a right to assume that the operator of an approaching vehicle will also exercise due care and have his vehicle under control as he comes to the scene. Studer v. Plumlee, 130 Tenn. 517, 172 S. W.

305; Hunter v. Stacey, 24 Tenn. App. 158, 141 S. W. (2d) 921, and cases cited. Since such a crossing pedestrian has equal rights with others to the use of the street, his duty is no more than to exercise ordinary care for his own safety, to be measured by the situation confronting him; such care as the immediate circumstances of place and condition demand of an ordinarily prudent person and, whether the requirement of ordinary care has been met, is usually a question for the jury. But this is not to say that it is always so; for the particular circumstances may give rise to a hazard of such a nature as to leave no doubt in reasonable minds as to the precautions which an ordinarily prudent person would take for his own safety; and that is the case we have here. 25 Am. Jur. 522, 523. That is to say, there was no room for a difference of opinion about the fact that an ordinarily prudent person would not have stepped off of the curb into that heavily traveled avenue and attempted to negotiate the continuous stream of traffic that was flowing past him in plain view without taking any notice whatever of his surroundings. Now, this is what the decedent did, and when he did so he not only failed to exercise ordinary care for his own safety but he failed to exercise any care at all. Notes: 14 A. L. R. 1185; 67 A. L. R. 322; 38 L. R. A. (N. S.), 490; 4 Ann. Cas. 398.

But the plaintiff insists that since the intersection where the accident occurred was within a "business or residence district" within the meaning of Code section 2687 (c), it was the duty of the defendant to yield the right-of-way to the deceased as required by that section of the Code. Assuming without deciding that the deceased had acquired the right-of-way within the meaning of the statute, this did not mean that he could proceed

"serenely oblivious" of surrounding circumstances as he certainly did do. Tri-State Transit Co. of La. v. Duffy (Tenn. App.), 173 S. W. (2d) 706; note 96 A. L. R. 786.

By the slightest use of his senses of sight or hearing, neither of which was shown to have been in any way impaired, the decedent would have discovered that at the very time he stepped from the curb, at least one car was already in the intersection and two others, one in each lane, were approaching at an estimated distance of from fifteen to thirty feet to the rear of the first car, not to mention the string of cars back of these. The only reasonable conclusion is that he did discover these facts, or would have done so had he exercised ordinary care, and attempted to cross notwithstanding them. This was a reckless act, of which no prudent person would have been guilty. To hold otherwise would be to turn out a conclusion unlighted by common sense and contrary to the realities of everyday experience; and that, be it said, is never a sound policy. See the cases collected in notes appearing in 96 A. L. R. 786; 65 A. L. R. 192, 205; 113 A. L. R. 548, 551, 552.

██ ██ The plaintiff has made some reference to what we know as the "last clear chance" doctrine, but there was neither pleading nor proof to warrant the application of that rule; no pleading, because the averments of the declaration proceed upon the theory that the decedent was guilty of no negligence at all; no proof, because the negligence of the decedent amounted to a reckless disregard for his own safety and continued as a casual factor to the moment of the collision. See Southern Ry. Co. v. Whaley, 170 Tenn. 668, 98 S. W. (2d) 1061; and Todd v. Cincinnati Railroad Co., 135 Tenn. 92, 185 S. W.

62, L. R. A. 1916E, 555; Tennessee Cent. Ry. v. Ledbetter, 159 Tenn. 404, 19 S. W. (2d) 258.

In an effort to get around the fact that the decedent walked into the side of the defendant's car, the plaintiff relies upon what may be shortly called the doctrine of sudden emergency. The doctrine is too familiar to require its exposition here. It is sufficient to say that if, in the course of events, the decedent was confronted with a sudden emergency, it was brought about by his own negligence, and hence that fact would avail plaintiff nothing. Caldwell v. Hodges, 18 Tenn. App. 355, 77 S. W. (2d) 817, and cases cited.

In support of his contention that the question of contributory negligence was one for the jury, the plaintiff refers us to two cases decided by this section of the Court, namely, Ferrell v. Midwest Dairy Products Company, from the law docket of Gibson County,[1] and Tri-State Transit Co. of La., Inc., v. Duffey (Tenn. App.), 173 S. W. (2d) 706. Upon the same question, she also cites the cases of Studer v. Plumlee, supra; Leach v. Asman, 130 Tenn. 510, 172 S. W. 303; National Cash Register v. Leach, 3 Tenn. App. 411; Jacobs v. Melton, 9 Tenn. App. 195; Nohsey & Schwab v. Slover, 14 Tenn. App. 42. We do not deem it necessary to discuss these cases. While they or some of them hold in effect that the rule of absolute duty to look and listen, applicable at railroad crossings, does not apply to a pedestrian crossing a street, yet they also recognize that the rule of ordinary care is applicable and that what constitutes that degree of care is to be determined by the circumstances and conditions of the particular situation confronting the one intending to cross the thoroughfare. As already

---

[1] No opinion for publication.

said, if these be such as that reasonable minds could not differ with regard to the precautions that an ordinarily prudent person similarly circumstanced would take for his own safety, then the matter is no less a question of law than would be any other proposition with respect to which there could be no reasonable probability of disagreement.

The distinguishing factor between the line of cases relied on by plaintiff and the one in hand, lies in the density of the traffic with which the decedent was immediately confronted when he left the curb, of which any ordinarily prudent person would have been aware and declined to go against.

There exists the same distinction between this case and that of Western Union Telegraph Co. et al. v. Dickson (Tenn. App.), 173 S. W. (2d) 714, from the law docket of Shelby County, which we have this day decided, wherein we held that under the particular circumstances there appearing it was for the jury to say whether the pedestrian should have done more looking than she did do as she made her way across a street intersection wherein she was struck and injured by a bicycle.

So, upon the whole case, we think the Judge was right when he directed a verdict for the defendant and dismissed the suit. The judgment is accordingly affirmed at the cost of the plaintiff.

Senter and Ketchum, JJ., concur.