# WESTERN UNION TELEGRAPH CO. et al. v. DICK-SON.—173 S. W. (2d) 714.*

Western Section. December 13, 1941.

Petition for Certiorari denied by Supreme Court, February 28, 1942.

*This opinion should have appeared in Volume 26 but was inadvertently omitted.

754

Canada & Russell and Cooper Turner, Jr., all of Memphis, for plaintiffs in error.

Hugh Stanton, of Memphis, for defendant in error.

ANDERSON, J. This action was brought by the original plaintiff, Mrs. Harry Dickson, against the Western Union Telegraph Company and one of its messenger boys, Robert McGregor, to recover damages for injuries sustained by her when she was struck by a bicycle ridden by McGregor while she was crossing Union Avenue in Memphis. There was a verdict and judgment for the plaintiff against both defendants. The case is here upon an appeal in error by the latter.

The sole contention is that the trial Judge should have sustained the defendants' motion for a directed verdict because: (1) There was no evidence to warrant the conclusion that the bicyclist was guilty of actionable negligence; and (2) if the contrary be true then the undisputed evidence was to the effect that the plaintiff was guilty of proximate contributory negligence "in attempting to cross Union Avenue without keeping a proper lookout for oncoming traffic."

The accident occurred about 9:30 o'clock A. M. on October 7, 1940, on Union Avenue, which runs east and west, between Main and Second Streets, both of which run north and south intersecting Union. November 6th Street enters Union Avenue from the north but does not extend south of that thoroughfare. Twenty feet west from a line projected from the west line of November 6th Street, a blind alley opens on the south side of Union Avenue and extends for a short distance to the south. Union Avenue carries a double line of street car tracks between Main and Second Streets and is 39.9 feet in width from curb to curb.

The plaintiff had parked her automobile on the north side of Union Avenue at the second space east of November 6th Street. She had crossed Union Avenue and entered a store on the south side known as H. A. Carroll & Company, the door of which faces the east property line of November 6th Street. As she came out of this door, intending to cross Union Avenue to regain her car, the space immediately in front of the entrance of the store, which was directly in line with the east property line of November 6th Street, was vacant. To the east, however, there was another car parked against the curb on the south side of Union Avenue, and to the west there

was a pile of dirt. As the plaintiff approached the curb, another automobile headed east was pulled up alongside of the easternmost car for the obvious purpose of parking by backing into the vacant space immediately in front of the store. As she stepped off of the curb, plaintiff looked to the west and seeing no traffic, then looked to the east and observed a car turning into Union from Second, which she said "was far enough away not to bother me." Apparently the rear of the car that was in the act of parking passed in front of her, the parking maneuver being of such a nature as to throw the rear of the vehicle angling toward the curb with the front pointing toward the northeast. As she proceeded from the curb, the plaintiff passed some five or six feet in front of that car and had reached the center of the south line of the street car tracks, a distance of 14 feet and 9 inches from the curb, when she was struck by the bicycle being ridden eastwardly by the messenger boy.

The boy was traveling at an estimated speed of 12 miles per hour. As he approached the intersection of Union Avenue with November 6th Street the parking maneuver above referred to was evidently in process. Apparently the boy was riding in close proximity to the extended outward line of the cars parked on the south curb. When, as a result of the parking maneuver, the front of the car so engaged was thrown outward, the messenger in order to avoid striking it, suddenly swerved to his left, striking plaintiff, who, as stated, was at that time in the middle of the south car track some 14¾ feet from the curb. As we have said, when plaintiff stepped off of the curb, the only moving vehicle in sight, aside from the one that was in the act of parking, was a car a considerable distance away that was turning into the north

side of Union from Second Street. It was too far away to be of any concern.

The plaintiff plead and proved certain ordinances of the City of Memphis. One of these defines "Congested Districts" in the city, included in which was the scene of the accident, between November 6th Street and Union Avenue. Another provides that, "Drivers of vehicles (including bicycles) shall exercise all possible care not to interfere with or injure pedestrians lawfully in the use of the streets, crossings and cross-walks". Another provides that, "Vehicles and street cars in the congested districts shall be driven in a careful manner and at such speed as not to endanger the safety or injure the property of anyone."

The defendant plead and relied upon an ordinance known in common parlance as the "Jay-walking Ordinance", providing in substance that no pedestrian shall cross any street except at a street intersection, and that pedestrians shall use only such crossings as are designated by lines or marks, or, if no lines or marks, shall cross only in the space between curb lines extended and the property line extending across any street over which the pedestrian intends to pass.

It was the plaintiff's theory that she was crossing at a street intersection and hence had the right-of-way, and that the messenger boy was approaching that intersection charged with knowledge of that fact and in violation of the speed limit as fixed by the city ordinance; that he was not keeping a proper look-out ahead, and that his negligent conduct in these respects was the proximate cause of her injury.

Upon the other hand, the theory of the defendants was that November 6th Street was not in fact a street but

was merely an alley, with no designated crossing of Union Avenue at its intersection, and that therefore Mrs. Dickson not only did not have the right-of-way but was violating the law in crossing Union Avenue at that point. It was further their theory that regardless of whether November 6th Street be considered an alley or a street, the plaintiff was guilty of proximate, contributory negligence in that she stepped from the south curb of Union Avenue between a parked automobile and one that was in the act of parking, "knowing that she could not see through or around the latter", and emerged from the front without again looking or attempting to look to the west as she reached a point where she could see, and stepped immediately in the path of the approaching bicycle so suddenly as that it was impossible for the rider to avoid striking her.

■ We deal first with the contention based upon the asserted proposition that November 6th Street was a mere alley. We think there is no merit in this. Streets and alleys are both public ways intended primarily for the use of the public in passing to and fro. For most purposes the only difference between them is in width. 35 Am. Juris. 344. Moreover, if in this connection there be anything in the name of a way, this particular thoroughfare had been specifically designated as a street by an ordinance of the city. It was formerly known as Maiden Lane. By an ordinance adopted on November 26, 1934, the name was changed to November 6th Street.

■ So, we hold that the ordinance regulating the crossing of streets by pedestrians was applicable at the scene of this accident and since the evidence showed that the plaintiff was crossing "in the space between the curb lines extended and the property lines extending across"

Union Avenue, she was proceeding lawfully and not in violation of the so-called "Jay-walking Ordinance", and the remaining questions must be disposed of upon that assumption.

■ We now come to the contention that the plaintiff was guilty of proximate, contributory negligence. As we have already indicated, the factual basis for this contention is that the plaintiff having once looked to the left as she stepped from the curb and ascertained that the way was clear, did not again look to the left as she cleared the front end of the parking car in her progress across the avenue. The insistence of the defendants upon this point, of course, is tantamount to saying that there was no room in reasonable minds for a difference about the proposition that, under the circumstances disclosed by the evidence viewed in the light most favorable to the plaintiff, an ordinarily prudent person would have again looked to the west at the stage of her progress referred to, and that the omission so to do contributed as a proximate cause to the plaintiff's injuries.

■ Now, we think this view is not tenable, and the reasons for our conclusion are these: A pedestrian has equal rights with others to the uses of the street and is required only to exercise ordinary care for his own safety. What is ordinay care is to be determined by the particular circumstances of the situation confronting him. It is not like the case of one about to cross a railroad track, for, due to the inherent dangers of that situation, the law has found it wise to specify, in part at least, what ordinary care requires; namely, that the crosser must look and listen; otherwise he cannot be said to have exercised ordinary care, whatever a jury might think of it if given a chance to say. But the Courts have consistently

declined to adopt this rule of absolute duty with respect to those about to cross a street or highway, and upon the contrary have laid it down that a traveler so intending is only to exercise such reasonable care as the case requires. Studer v. Plumlee, 130 Tenn. 517, 172 S. W. 305; Hunter v. Stacey, 24 Tenn. App. 158, 141 S. W. (2d) 921, and cases cited; 25 Am. Jur. 522, 523, 524.

So we have the question of whether, under the particular circumstances above stated, a reasonably prudent person would have again looked to the west before proceeding. True, the scene was in what is called a congested area, but at the particular time the evidence showed that there was only one moving vehicle in sight and that was on the north side of the avenue and so far away, as, in our view and that of the jury to give an ordinarily prudent person no concern.

■ ■ Another factor to be considered was that the plaintiff had the right-of-way over any vehicle approaching the intersection for, in the absence of an applicable regulatory statute or ordinance (and none is invoked by the parties), the common law governed the rights of those using, or about to use, the intersection, and the rule there is, that the one first entering an intersection is entitled to the right-of-way. Maxwell v. Kirkpatrick, 22 Tenn. App. 21, 116 S. W. (2d) 340. The fact that November 6th Street stopped in Union Avenue made the scene no less an intersection than if it had crossed that thoroughfare and extended south of it. Johnson v. Warwick, 148 Tenn. 205, 254 S. W. 553; 5 Am. Juris., sec. 288, page 662; notes 31 Am. St. Rep. 488, and 78 A. L. R. 1198. An "intersection", within the meaning of the rule referred to, means the space common to both streets or highways, formed by continuing the curb lines. Wilson

v. Mullen, 11 Tenn. App. 319, 327; 5 Am. Juris., sec. 288, page 663.

■ We say that the plaintiff had the right-of-way because we think it was a reasonable inference from the facts,—in truth, the only inference possible, that she entered the intersection first; for, by a map offered in evidence the accuracy of which is not challenged, it was shown that November 6th Street is only 18 feet and 8 inches in width. So it was of necessity made to appear that the plaintiff, while walking at a proper place on the east side of the intersection, traveled a distance of 14.9 feet while the bicyclist, going at a rate of 12 miles an hour, traveled a distance of 18 feet and 8 inches. In order for this to be true, it seems to us an inescapable conclusion that the plaintiff was first in the intersection. But this is not all upon the point. The plaintiff testified, and the jury having accepted her testimony as true we must do likewise, that as she stepped from the curb she looked to the west and hence directly across the intersection, and in that direction there was no bicyclist or other vehicle in view.

■ It is not accurate to say that her vision was at that time obscured, for there was no car parked west of the entrance of the store from which she emerged but only a pile of dirt of undisclosed dimensions, which, in the absence of evidence, we cannot assume obstructed her view. Hence the jury were well warranted in concluding that her vision was at that time unobscured for a sufficient distance to warrant a prudent person in believing that there was no hazard from a vehicle approaching the intersection and operated with due care; that is to say, in believing that no vehicle so operated would appear upon the scene in such a manner as to endanger her safety

before she could clear the front end of the parking car and cross the lane of eastbound traffic.

■ We do not, of course, mean to say that one having the right-of-way is relieved of the duty to exercise ordinary care, but the fact that the right-of-way is his and he knows it, is a factor and may be an important one in determining what is required by ordinary care with respect to the use of the senses and otherwise; for such an one may proceed upon the assumption that vehicles approaching that point will be under control so as to enable the operators to perform their duty to yield the right-of-way. Compare Tri-State Transit Co. v. Duffey (Tenn. App.), 173 S. W. (2d) 706.

■ Hence, we decline to hold that plaintiff was guilty of contributory negligence, as a matter of law, in failing to make greater use of the sense of sight than she did do, as she proceeded across the street.

In addition to the cases cited, the following are more or less in point on the facts: Emert v. Wilkerson, 7 Tenn. App. 269; National Cash Register Co. v. Leach, 3 Tenn. App. 411; Taylor v. Arnold, 2 Tenn. App. 246; Elmore v. Thompson, 14 Tenn. App. 78. See, also, 25 Am. Juris. 523, 524.

■ But, even if it be assumed that plaintiff was guilty of negligence, we think it was for the jury to say whether it was remote or contributed as a proximate cause to her injuries.

■ "The proximate cause of an injury", said the Court in Deming et al. v. Merchants' Cotton-Press & Storage Co., 90 Tenn. 306, 353, 17 S. W. 89, 99, 13 L. R. A. 518, "may, in general be stated to be that act or omission which immediately causes or fails to prevent the injury; an act or omission occurring or concurring with

another which had it not happened, the injury would not have been inflicted.''

However, the ''·'proximate cause' is not necessarily that which is next or last in time or place, but that which is a procuring, efficient, and predominant cause. Closeness in causal relation, rather, is the meaning.'' Grigsby & Co. v. Bratton, 128 Tenn. 597, 603, 163 S. W. 804, 806.

The ''remote cause'' of an injury is defined to be ''that which may have happened, and yet no injury have occurred, notwithstanding that no injury could have occurred if it had not happened.'' Anderson v. Baltimore & O. R. Co., 74 W. Va. 17, 81 S. E. 579, 581, 51 L. R. A. (N. S.), 888, 892; note, 36 Am. St. Rep. 807.

This definition of the remote cause of an injury was approved by this Court in Elmore v. Thompson, 14 Tenn. App. 78, 100, and also in Phillips-Buttorff Mfg. Co. v. McAlexander, 15 Tenn. App. 618. In the same cases the Court quoted with approval from 2 Blashfield's Cyclopedia of Automobile Law, sec. 4, p. 1194 as follows: ''There is a distinction between an unlawful or wrongful act which is at least a contributing cause of the injury sued for, and one which is merely an attendant circumstance or condition, though perhaps a necessary condition of the acts resulting in such injury. An event may be one without which a particular injury would not have occurred; yet, if it was merely the condition or occasion affording opportunity for other events to produce the injury, it is not the proximate cause thereof.'' Blashfield, supra, p. 1194; Id. [Perm. Ed.] sec. 2535.

In those cases the Court also took occasion to reiterate that ''the inquiry as to what is the proximate cause of an injury, like that of negligence, is always for the jury, unless the determinative facts are undisputed and are reasonably susceptible of but one inference''.

 Now, in the present case we think it manifest that, at the time she was struck, plaintiff had already cleared the direct path, which the bicycle was traveling. This is shown by the undisputed fact that the vehicle was veered sharply to the rider's left just before its struck plaintiff, and the jury was warranted in concluding that this, and not the failure of plaintiff to look again to the west, was the proximate cause of her injury. Compare Nashville, C. & St. L. R. Co. v. White, 158 Tenn. 407, 15 S. W. (2d) 1; and Elmore v. Thompson, supra.

It is. doubtless true that the rider had to swerve his vehicle to his left in order to avoid striking the front of the parking car, but that is beside the question of what was the proximate cause of plaintiff's injuries.

 Now, as to the remaining question of whether there was any material evidence to support the conclusion that the conduct of the messenger boy constituted actionable negligence: this, too, we answer in the affirmative, and our reasons we proceed to briefly state. The boy was chargeable with knowledge that he was approaching an intersection where pedestrians had a right to cross the street. As he came down the street he also necessarily observed the car that had pulled alongside the other car parked just to the east of the intersection for the purpose of backing in to the vacant space. He must be presumed to have known also that the parking maneuver then in progress would throw the front end of the car outward toward the middle of the street. Now, it turned out, that as a result of this maneuver the front end of the car was thrown across the line of travel that the boy was pursuing, for, as stated, he said that it was necessary for him to swerve suddenly to the left in order to avoid striking the car. He also said that he did

not see the plaintiff at all, but the jury manifestly found that this was not true or that if true his failure to see her was due to the fact that he was not keeping a proper lookout. We say this because, as we have already pointed out, it was a reasonable inference which the jury doubtless drew that at the time of the collision the plaintiff had crossed the line of travel that the boy was pursuing. This, we say, is shown by the fact that, at the time she was hit, she had reached the center of the south car tracks, and also indisputably by the fact that the boy swerved to the left to strike her. In view of these undisputed facts it is difficult to perceive how he could have failed to see plaintiff at some stage of her progress if he had been on the lookout. It may be that it was due to the fact that his attention was centered on the parking car, but this we think is no legally sufficient excuse for his failure to see plaintiff, who as stated, must of necessity have crossed squarely across his line of travel immediately before the collision. He knew the car was in the act of parking and was chargeable with knowledge of what the effect on his progress would be. It is thus apparent that if the parking maneuver had not thrown the front of the car across the path of the approaching bicycle, the rider would not have had to swerve the vehicle to the left, but would have continued in the line he was traveling and would not have struck the plaintiff.

It would avail defendants nothing to say that the conduct of the driver of the parking car also contributed as a proximate cause to plaintiff's injuries, in that he manipulated his car so as to make necessary the act of the bicyclist in swerving to the left, even if this were sound from the standpoint of logic, for the rule is this: Where there are two causes which proximately con-

tribute to an injury, for only one of which the defendant is responsible and with the other of which neither he nor the plaintiff is chargeable, the defendant must be held to answer for the injury inflicted. Columbia & B. B. Turnpike Co. v. English, 139 Tenn. 634, 202 S. W. 925.

Upon the question of the negligence of the bicycle rider, the case as reflected by the jury verdict comes down to this: plainly seeing that a car was engaged, or about to be engaged, in a maneuver that would throw a portion of it across his line of travel, in a street intersection where pedestrians had a right to cross, the rider proceeded at a rate of speed at which he could not stop his bicycle in time to avoid hitting the car, and was thus confronted with the necessity of running against the automobile or swerving to the left and striking the plaintiff. In this situation he chose the latter course, and we are not disposed to say that the jury was wrong in finding negligence upon either of two counts or both, namely, that the failure to see the plaintiff was because the boy was not keeping a proper lookout and that he was approaching the intersection upon which a pedestrian had entered without having his vehicle under the control that was necessary to stop it in the emergency that was in the process of being created, a fact that was obvious.

The defendants refer us to the case of Nichols v. Smith, 21 Tenn. App. 478, 111 S. W. (2d) 911, but without discussing the facts of that case it is sufficient to say that we think it not in point. Why we think so is sufficiently indicated by what we have already said.

The result is that the judgment is affirmed at the cost of the defendants.

Senter and Ketchum, JJ., concur.