# LEDFORD v. SOUTHEASTERN MOTOR TRUCK LINES, INC., et al.—200 S. W. (2d) ,981.

Western Section.   June 11, 1946.

Petition for Certiorari denied by Supreme Court, January 11, 1947.

W. R. Landrum, of Trenton, and John M. Drane, of Newbern, for plaintiff in error.

Arthur Rogers, of Milan, and Cate & Cate, of Nashville, for defendant in error.

ANDERSON, P. J. Referring to the parties as of their status in the trial court, the action is one for damages for personal injuries sustained by the plaintiff Ledford in a collision between a power mower he was operating, and a large truck belonging to the defendant Southeastern Motor Truck Lines, Inc., and operated by its servant, the defendant Etheridge. At the conclusion of all the evidence, the trial judge directed a verdict for both the defendants and the plaintiff appealed in error.

There was evidence tending to show the following facts: The accident occurred on U. S. Highway 51, between Newbern and Dyersburg. In the immediate vicinity the thoroughfare runs in the general direction of north and south. The paved portion is 16 feet in width. There is a 9-foot grass-sodded shoulder on each side flush with the pavement.

Just prior to the accident the plaintiff, an employee of the State Highway Department, was operating a power mower, cutting the weeds and grass on the east side of the highway on a part of the shoulder that tapered downward to a ditch. He was approaching a concrete

bridge, which carried the thoroughfare across a small creek. The bridge had solid concrete banisters on each side about 3½ feet high, and guard rails that flared out from each end of the bannisters for a distance of approximately 18 feet. As he neared the end of the bridge, the plaintiff raised the blade of his mower, turned the machine away from the bank of the ditch for the purpose of crossing the highway to mow southward on the opposite side. After a part of his machine had crossed the middle of the pavement, the front was struck by the defendant's truck then proceeding south, with the result that the power mower was pushed around and its direction changed. The first impact did not throw the plaintiff from his seat, nor does it seem to have resulted in any injury, but the continued forward movement of the truck caused the rear wheels to strike the rear of the power mower, throwing the plaintiff against and under the truck, with the result that he was seriously injured. The truck continued for 40 or 50 yards before it was brought to a stop. The point of collision was about 20 to 25 feet south of the concrete bridge. The bridge proper is between 30 and 40 feet in length. North of the bridge the highway is level for a distance of 4/10 of a mile. At that point there is a hill, over which the defendant's truck came as it neared the scene.

Just prior to the accident the plaintiff's foreman had taken his position at or near the southeast corner of the bridge. He knew of the plaintiff's purpose to cross the road and mow down the opposite side. In taking that position it was the foreman's purpose to warn of any traffic which might approach while the operation was in progress. At the same time the truck, or car, used by the foreman and belonging to the State Department of Highways, was standing north of the bridge on the east

side of the road, headed in the direction from which the defendant's truck approached. The foreman's vehicle bore two flags, one affixed to each side of the front bumper, and also an inscription or marks indicating that it belonged to the State Highway Department.

As the plaintiff approached the bridge and turned his mower to go up the slope of the shoulder, his view of the highway was obstructed by the abutments of the bridge to the extent that he could not see a vehicle approaching from the north. After he got upon the shoulder he did not look for approaching traffic, since in that connection he was depending on his foreman. He testified that he did not see the defendant's truck; that the last thing he remembered was when he started across the highway.

As the plaintiff started to turn his mower for the purpose of crossing the highway, the foreman from his position near the bridge looked to the north for approaching traffic and none was in sight. He testified that when the plaintiff "got on the road, this truck came by," that "it got even with me before I saw it"; "I hollered but it was too late." In response to an inquiry by the Court as to whether the truck had passed through the bridge when he saw it, the foreman said, "I was past the bridge myself, he came on just like that" snapping his fingers to illustrate. He also testifed that not more than 30 seconds had elapsed between the time he looked to the north and observed no traffic approching, and the time that he was first aware of the defendant's truck.

The defendant truck driver testified in substance that as his vehicle came over the crest of the hill it was traveling 30 to 35 miles per hour; that he saw the power mower coming up the shoulder, the parked high-

way truck with the flags on it, and the foreman standing on the side of the road; that he realized the significance of these circumstances and knew that work was being done on the highway in the immediate vicinity ahead; that he was accordingly on the alert for "what might happen and could happen"; that it was obvious that "we were going to meet at the bridge or close to the bridge"; that when the mower reached about the abutment of the bridge, the driver raised the mower blade and cut his front wheels a little to the left but not enough to enable him to determine whether the other vehicle was going to cross the road or cross the bridge; that when halfway between the bridge and the hill he began a gradual reduction in the speed of his truck so that when he reached a point a hundred feet north of the bridge he was traveling about fifteen miles per hour and crossed the bridge at that speed.

It also appears from the testimony of the defendant truck driver that while running at the rate of 15 miles per hour the truck could be brought to a gradual stop within 36 feet; and that the overall weight, including the load, was 23,000 pounds.

Upon the question of the speed, the defendants introduced an eyewitness, who testified that the truck came across the bridge at not over 30 to 35 miles per hour.

■■ The verdict for the defendants was directed on the ground that the plaintiff was guilty of contributory negligence as a matter of law. We think the evidence made this question one for the jury. The rule requiring railroad employees working about a track to be constantly on the lookout and never to become so engrossed in their work as to preclude their taking precautions necessary to ascertain whether a train is approaching, is not applicable to laborers working on a street or high-

way. The reason is that vehicles on the highway are not confined to a track as are railroad trains and can easily avoid workmen by going around them. Hutt v. C. J. Harris Lumber Co., Mo. App., 253 S. W. 472. Such a workman is not an ordinary pedestrian with no care other than for his own safety. On the contrary, he must necessarily devote his attention to his work and it is generally held that he is not guilty of contributory negligence for failure to keep a sharp lookout for approaching vehicles. Cecola v. 44 Cigar Co., 253 Pa. 623, 98 A. 775; State Compensation Ins. Fund v. Scamell, 73 Cal. App. 285, 238 P. 780; King v. Green, 7 Cal. App. 473, 94 P. 777; Gaylor v. Wienshienk, 221 Mo. App. 585, 283 S. W. 464; Ostermeier v. Kingman-St. Louis Imp. Co., 255 Mo. 128, 164 S. W. 218; Mooney v. Gilreath, 124 S. C. 1, 117 S. E. 186; Dube v. Koegh Storage Co., 236 Mass. 488, 128 N. E. 782; Chaney v Moore, 101 W. Va. 621, 134 S. E. 204, 47 A. L. R. 800.

But apart from this rule, we think that the question of whether plaintiff was guilty of negligence which contributed as a proximate cause to his injuries was one for the jury. It is true that the circumstances may be such that ordinary care requires one crossing a street or highway to be on the lookout for traffic. But if he does not look, the most that can be said is that he is chargeable with seeing what he would have seen had he done so. In this case, if a jury should accept as true the testimony of the foreman, there was no traffic in sight for a distance of a quarter of a mile at the time the plaintiff started to turn his mower for the purpose of crossing the highway. So, if plaintiff had looked to the north at that time he would have seen nothing, and hence the consequences of his failure to look cannot be said to be fatal to his suit as a matter of law.

■ In starting across the highway, plaintiff had a right to proceed upon the assumption that the driver of any vehicle that might come in sight while the operation was in progress would take due notice of the situation and take whatever precautions were necessary to avoid striking his vehicle. In these circumstances we are of the opinion that the question of whether ordinary care required more of the plaintiff than he did, was a question for the jury. Compare, Tri-State Transit Co. v. Duffey, 27 Tenn. App. 731, 173 S. W. (2d) 706; Western Union Tel. Co. v. Dickson, 27 Tenn. App. 752, 173 S. W. (2d) 714

■ ■ But it is insisted by the defendants that there was no material evidence to warrant a conclusion that the driver of the truck was guilty of negligence and therefore the action of the trial judge in directing the verdict should be sustained on that ground. We are unable to agree. The driver of a vehicle having reason to know that workmen are engaged on the highway is chargeable with knowledge of the fact that the workmen must necessarily devote their attention to their work, and he must take this fact into consideration in determining what his duty requires. Ordinary care is a relative term, and what is required by it depends upon the facts and circumstances of the particular situation. Precautions which might be adequate in some circumstances would be wholly inadequate in others. For instance, those necessary to avoid striking an ordinary pedestrian might not meet the requirement of ordinary care in the case of a workman engaged on the highway, the difference being brought about by the fact that the attention of the workmen is devoted to his work, a fact of which, as said, the driver of the motor vehicle must take notice.

It is not, as has been sometime suggested, a question of being required to exercise a higher degree of care than ordinary care, but rather one where ordinary care requires more than is usually the case due to the difference in the circumstances.

In the present case the operator of the truck testified that when he got to the top of the hill, a quarter of a mile distant, he realized that workmen were engaged on the road ahead, and it is a fair inference that he was aware or should have been aware of the intention of the plaintiff to cross the road just south of the bridge. In fact, he testified that he observed that the wheels of the power mower were turned to the left, indicating that the plaintiff was either going to cross the road or cross the bridge. A jury accepting the testimony of the foreman, we think, might have found that in this situation the driver of the vehicle did not exercise ordinary care to have his truck under the control necessary to avoid a collision with the power mower in the event it attempted to cross the road. See 5 Am. Jur. 611, 612.

Moreover, if the testimony of the latter with respect to his rate of speed be accepted, we still think the question was one for the jury. As above shown, he testified that when he reached a point a hundred feet from the bridge he had slowed down to 15 miles an hour, and that at that rate he could have made a gradual stop of the truck within 36 feet. When the truck was a hundred feet from the bridge it was from 130 to 140 feet from the point of collision. The jury might have found that at that time the power mower was on the shoulder unmistakably manifesting an intention to cross the pavement and that since the driver testified he could stop his truck within 36 feet, his failure to do so was a

failure to do what was required by the exercise of ordinary care.

■ We are further of the opinion under the circumstances herein stated in the light most favorable to the plaintiff, a jury might have found that from the time the truck passed the crest of the hill the driver knew, or should have known, that both the plaintiff and the foreman were unaware of the approach of his truck and that in this situation ordinary care required that he give an adequate warning, which he failed to do.

We are not to be understood as intimating with respect to any of the issues that a jury must reach the conclusions herein indicated as possibilities, or that no other view was reasonably possible. We hold only that when the evidence is viewed in the light most favorable to the plaintiff it was sufficient to require a submission of the issues to a jury.

The result is that the judgment is reversed and the case remanded for a new trial. The cost of the appeal is adjudged against the defendants and the cost of the trial court will abide the event there.

Ketchum and Baptist, JJ., concur.