# SOUTHERN RY. CO. et al. v. CHAPMAN.— 205 S. W. (2d) 967.

Eastern Section.   July 9, 1947.

Petition for Certiorari denied by Supreme Court, October 4, 1947.

Susong, Parvin, Fraker & Rogan, of Greeneville, for plaintiffs in error.

Kilgo & Armstrong, of Greeneville, for defendant in error.

HALE, J. We speak of the parties as they appeared below. The plaintiff, Lucy Chapman, sued in damages for personal injuries sustained when hit by a railway motor car at a crossing in Greeneville. The defendants are the Southern Railway Company and its servant, Pace, the operator of the motor car in question. The jury found in favor of plaintiff and fixed her damages at $500, which was approved by the trial judge when tested by motion for a new trial. The defendants have prosecuted this appeal and assign errors, insisting there was no evidence to support the verdict; that the plaintiff was guilty of proximate contributory negligence as a matter of law; and that the doctrine of last clear chance was improperly applied, in that the doctrine of actually discovered peril was applicable under the facts of the case.

The declaration was in three counts. The first charged common law negligence. The second and third charged statutory negligence but were eliminated by demurrer and no question is made in this respect.

The plaintiff is fifty-eight years of age, the mother of several children, and wears glasses. She had been to visit a daughter in a hospital and was returning home, walking southwardly along a street which is crossed by the track of the defendant railway running east-west. This crossing is known as the Pet Milk Co. Crossing and is characterized as "dangerous" and so known to all parties to the suit.

The noon passenger train, "41," was approaching from the east. Plaintiff knew the schedule and that the train was about due. A railway motor car (not the one involved in this suit) in charge of the witnesses King and Fry had stopped at this crossing and removed from the tracks to allow the passage of the train. King, the aforesaid employee, then began to flag traffic and protect it from the approaching train. He said Mrs. Chapman was about to enter the crossing in front of the train and that he grabbed her and pulled her back. He then gave his attention to the passing train, "to see that there wasn't anything dragging on the train, as we are instructed to do that." As the train was clearing the crossing, he "turned around and looked to see if anybody was coming to the crossing because I noticed the motor car was coming behind . . ." and then heard somebody "holler" and saw Pace approaching and put on his brakes, and "I looked around and looked up at the side there next to my motor car and I saw . . ." Mrs. Chapman "just had stepped up on the ties I believe and he hit her. I turned around to see what he was going to hit by that time."

Immediately following the passenger train was a small railway motor car driven by the defendant Pace, who was charged with the duty of maintaining the electrical signal system of the railway. The evidence is conflicting as to the distance he was to the rear of the train. He says 800 feet. Others say he was right behind the train, so close that had the train stopped "he'd run square through it." There is a like variation as to the speed of this motor car. One witness says it overtook and passed a truck on a road paralleling the railroad when it was making 25 to 30 miles per hour. Pace says he

was driving at 15 miles per hour until he approached the crossing when he reduced to 5 or 6 miles per hour. Plaintiff offered evidence showing that as Pace approached this crossing he was standing in this motor car, waving his hat and calling greetings to people along the track and was not looking ahead. There was no signal given of his approach. He says he was keeping a lookout ahead but that because of a little dip there and because of the parked car of King he could not see Mrs. Chapman until she stepped on the track. The railway motor car driven by Pace was only five high from the rails and fifty-two inches in width.

Mrs. Chapman testified that immediately after the train passed the crossing she looked eastwardly and did not see the Pace car approaching. She stepped on the track and was hit and suffered serious injuries.

It is argued by the plaintiffs in error that she did not look; that had she done so she would have seen the approaching motor car. The jury may have concluded that if Pace, standing in his motor car, could not have seen her that she could not have seen him. We think that the disparity in the sizes of the train and the motor car, and in the noise they would make, the proximity of the motor car to the rear of the train, the fact that plaintiff had been warned of the approach of the train but not of the motor car, by King, and the inability of Pace to see her until she was on the track (as reflecting her inability to see him) were factors to be considered by the jury and that we are bound by their verdict.

▮ The case was submitted to the jury under the doctrine of last clear chance. Was this reversible error? We think not.

█ Under the facts of this case, viewed in the light most favorable to plaintiff, we think it was a question for the jury as to her contributory negligence.

█ The principle established in the case of Patton, Admr. v. Railway Co., 89 Tenn. 370, 15 S. W. 919, 921, 12 L. R. A. 184, controls the instant case. There, Tipton, the intestate, was walking upon the track of the railway. He was overtaken by a freight train and stepped aside to permit it to pass, and then stepped back upon the track without looking and was struck and killed by cars which had become detached from the train and were running by gravity. In passing upon the question of contributory negligence of the deceased, Mr. Justice Lurton said:

"The case stated in the declaration makes an exceptional case, and one which should go to a jury. The deceased stepped off to permit the approaching train to pass him. When it had passed it was not unreasonable to suppose it had all passed. The duty to look and listen when going upon a railway track is a continuing duty so long as one continues upon it, using it as a walk-way. The duty of a person so situated to continue to look out for himself, in view of the consequences likely to result from inattention, cannot be less imperative than the duty of the employees operating a train to look out for him. The statute not being applicable, the negligence of each may appear equal, and in that case there can be no recovery. The peculiar circumstances under which this intestate went upon the track, and the fact stated to account for his failure to observe this train, that he was crossing a bridge, under which there was a water fall, the noise of which probably prevented his hearing, alone prevents the negligence of the deceased from barring any recovery.

"The fact that the deceased went on the track without looking or listening, and that he continued upon it unconscious of danger until overtaken and run down, is negligence which cannot be overlooked, and for this negligence he cannot be entirely exonerated, and this must be allowed in mitigation of damage even if the jury shall think that it, under the peculiar facts of this case, was not the more immediate cause of the accident."

In Railroad v. Dies, 98 Tenn. 655, at pages 663, 664, 41 S. W. 860, 862, it was said:

"These obligations to stop and look and listen must receive a reasonable construction and interpretation. It cannot be required that a person shall always stop, or always look, or always listen; but the requirement is that these precautions shall be so observed as to free the party from all negligence. A party cannot be required, for instance, to stop or listen when, on approaching a crossing, he can see a reasonable distance up or down the track so as to be certain he runs no risk in crossing. He cannot be required to listen if he is deaf, or the noise of the surroundings is so great as to preclude all possibility of hearing. He cannot be held liable for negligence in failing to look when his view is absolutely cut off or so obstructed as that he can see nothing until he is entering or has entered on the track. A person cannot be deemed negligent because he fails to stop at each track when there is a series of parallel tracks so near to each other that he can see as effectually by stopping once, or by not stopping at all, as by making continuous or repeated stops. So, too, it could not be deemed negligence for a traveler to fail to observe any of these precautions in cases where the railroad has a flagman at a crossing, and he gives the signal for crossing in safety, nor when in other ways

the railroad throws him off his guard, by failing to exercise legal requirements and usual observances and ordinary cautions, and thus leads him into real danger under an apparent aspect of safety.''

In Nashville, C. & St: L. R. Co. v. Parks, 136 Tenn. 367, 189 S. W. 695, it was said:

''Much of the claimed difficulty in attempting to reconcile our cases that treat of the duty of a traveler to exercise the precaution of looking and listening before going upon or crossing a railroad track is more apparent than real, and grows out of a failure to note the fact that he may, by the finding of a jury, be excused in respect of this duty only in exceptional circumstances.'' 136 Tenn. at page 370, 189 S. W. at page 696.

The cases of Todd v. Cincinnati, N. O. & T. P. R. Co., 135 Tenn. 92, 185 S. W. 62, L. R. A. 1916E, 555; Tennessee Cent. Ry. Co., v. Ledbetter, 159 Tenn. 404, 19 S. W. (2d) 258; Wells v. Southern Ry. Co., 1 Tenn. App. 691; and Zamora v. Shappley, 27 Tenn. App. 768, 173 S. W. (2d) 721, relied upon by the plaintiffs in error, do not support their contentions.

The Todd case, supra, 135 Tenn. 92, 185 S. W. 62, 65, L. R. A. 1915E, 555, discusses the exception to the rule and, after a citation from Thompson on Negligence, says:

''Quite as common and yet a more apt illustration is that of a motorman of a street car bound to vigilance with regard to the safety of those travelers who are making use of the public street on which his car is operated, and in such case this court has held that actual discovery of plaintiff's peril is not necessary to convict the defendant company of negligence, but it is bound by what its motorman could have discovered in the exercise

of ordinary care. [Memphis St.] Railway Co. v. Haynes, 112 Tenn. [712], 736, 81 S. W. 374.''

In the Ledbetter case, 159 Tenn. 404, 19 S. W. (2d) 258, the action of the person killed was characterized as ''gross negligence,'' citing Tennessee Cent. Ry. Co. v. Page, 153 Tenn. 84, 282 S. W. 376.

And in Zamora v. Shappley, supra, 27 Tenn. App. 768, 173 S. W. (2d) 721, it was said the negligence of the deceased amounted to a reckless disregard of his own safety and continued as a causal factor to the moment of collision.

We think the case was properly submitted to the jury. The verdict was remarkably low. If any errors were committed they were not against plaintiffs in error. Affirmed with interest and cost.

McAmis and Burnett, JJ., concur.