## LOUISVILLE & NASHVILLE RAILROAD CO. v. R. L. MAY.

Western Section.    April 14, 1927.

Petition for Certiorari denied by Supreme Court, July 15, 1927.

1. **Negligence. A person is bound to see what may be seen.**

When the vision is unobstructed and one looks or says he looks and states that he did not see an object when in truth the object was there and might have been seen, held that under such circumstances the statement can not be accepted as evidence for one is bound to see what may be seen.

2. **Negligence. Plaintiff held guilty of contributory negligence.**

In an action to recover for damages sustained in a crossing accident where the plaintiff testified that he looked for the train but did not see it, and the evidence showed that if he had looked, he must have seen the train, held the evidence was sufficient to show plaintiff guilty of such contributory negligence as would bar a recovery under the common-law count.

3. **Railroads. Where there is a conflict of evidence as to the railroad's negligence, the case is for the jury.**

In an action to recover for damages sustained in a crossing accident where the evidence was conflicting as to whether the railroad had complied with the statutes, held that a case was made for the jury and the verdict must stand.

Appeal from Circuit Court of Shelby County; Hon. M. R. Patterson, Judge.

Affirmed.

Henry J. Livingston, of Memphis, for appellant.

Stickley & Fitzhugh, of Memphis, for appellee.

HEISKELL, J. The parties will be referred to as plaintiff and defendant as in the court below.

The plaintiff, R. L. May, sued the defendant, Louisville & Nashville Railroad Company, for sixteen thousand dollars ($16,000) for personal injuries and damages to his automobile. The plaintiff was driving south on McLean boulevard, in the City of Memphis, and his automobile was struck by a passenger train of the defendant, which was proceeding east. The plaintiff's declaration contained a common-law count in which it was alleged that the defendant was guilty of negligence in the following particulars:

1. In not having the engineer, fireman or any other person upon the lookout ahead.

2. In failing to give proper alarm of the approach of the engine when the plaintiff appeared upon the track and in failing to use proper means to stop the train and prevent the accident.

3. In operating the train at a reckless and dangerous rate of speed.

4. In operating the train without a proper headlight.

5. In not having a watchman or warning signal at said crossing.

In a second count the declaration alleged violation by the defendant of the statute appearing as section 1574 of Shannon's Code, which requires every railroad company to keep the engineer, fireman or some other person upon the locomotive always upon the lookout ahead; and upon the appearance of an obstruction upon the road to sound the alarm whistle, put down the brakes, and use every possible means to stop the train and prevent an accident.

The declaration contained a count alleging violation by the defendant of certain ordinances of the City of Memphis with reference to the speed and operation of trains within the corporate limits, and the maintenance of flagmen at crossings.

The defendant pleaded (1) not guilty; (2) contributory negligence of the plaintiff; (3) unreasonableness and invalidity of the city ordinances relied upon.

Upon the trial the plaintiff abandoned the count of his declaration relying upon said city ordinances, so the case was heard and submitted to the jury only upon the common law and statutory counts.

The defendant moved for a directed verdict and the motion was overruled. There was a verdict in favor of the plaintiff for $1500— $750 for personal injuries and $750 for damage to the automobile. The defendant has appealed and assigned errors. Only one question is presented. That there is no evidence to support the verdict and therefore defendant was entitled to a directed verdict.

On approaching the crossing in question from the north it is necessary to go up a grade from McLean to the first track. The plaintiff testified that this was a twenty or twenty-five per cent grade and that the railroad tracks were fifteen feet higher than the bed of McLean avenue. A survey by an engineer for defendant showed the grade to be 6.78 per cent. This incline or grade began at a distance one hundred and thirty-five (135) feet north of the first track. McLean is practically level from ten feet north of the north track on south. Plaintiff testified that his view to the west was obstructed to some extent by brush and undergrowth, until he had reached a point about fifteen or twenty feet north of the first railroad track or about thirty feet from the north rail of the second track. Plaintiff testified that it was dark and raining at the time of the accident in question and that it was so dark a person could not see more

than one hundred and fifty feet. Some of the defendant's witnesses, while admitting that it was a dark, rainy day, testified that a person could see several hundred feet. It was undisputed, however, that at the time of the accident all the electric lights were burning, as well as lights on automobiles. The accident occurred six minutes before sundown. It was not dark in the sense of night, but no doubt as dark as consistent with the time of day.

Plaintiff worked in the northern part of the city and lived in the southern part and was on his way home at the time of the accident, driving a Maxwell automobile. When he reached a point ten or fifteen feet north of the north rail of the first track, he says he stopped his automobile and looked west for an approaching train. He says he then looked toward the east for a train in that direction and listened. He did not see or hear a train and thereupon shifted the gears of his automobile from high speed to second speed and approached very slowly until he had reached the first track, where he says he stopped, looked and listened again before going upon the tracks. Not hearing or seeing a train he says he thought the way was clear and started across the tracks very slowly, not more than three or four miles per hour, but before he had cleared the second or east bound track a local passenger train of the defendant, coming from the west, struck the rear right side of plaintiff's automobile and knocked it forty (40) feet east of the crossing. The automobile was completely demolished and plaintiff was seriously and permanently injured. He was rendered unconscious and remained so for a period of approximately eleven days. A large gash was cut in his head above his eye, leaving a scar, several ribs were broken, his legs were bruised and he was otherwise injured. He remained in the hospital for twenty-two days and was unable to go back to his work for two months. The uncontradicted evidence shows the automobile to have been worth before the accident nine hundred dollars ($900) and absolutely worthless after the accident.

This is a sufficient statement of facts as to the first count of the declaration, the common law count. Taking plaintiff's own statement in connection with other undisputed evidence we have this situation. The plaintiff stopped his car at the north rail of the first track. From this point he could see west one-fourth of a mile except that the darkness limited his vision to 150 feet. That is, there is no obstruction for a quarter of a mile, but he says it was too dark for him to see the train more than 150 feet. He was on the level part of the street at the top of the incline with nothing to obstruct his vision except the dark day which cut the distance he could see down to 150 feet. The incline of the street and any underbrush there might be on the incline were behind him and are utterly immaterial. He was on the level street going south and the train was going east on a

track at least thirteen feet or more south of plaintiff. He says he looked and listened and then moved forward at the rate of three or four miles an hour, and did not see the train until within one foot of him. The duty of plaintiff to look and listen was a continuing duty. Todd v. Railroad, 135 Tenn., 101, 185 S. W., 62, L. R. A., 1916E, 555.

That is, he was bound not only to look and listen at say, thirteen or more feet from the track on which the train was moving but to continue to do so as he went forward. The plaintiff says he was going three or four miles an hour. At that rate a car can be stopped in a few feet. As to the speed of the train, witnesses vary from eighteen to thirty-five miles an hour. If we take the highest estimate contended for by plaintiff, the train was moving about ten times as fast as plaintiff's car. Then before plaintiff could cover the thirteen feet the train must have been well within the 150 feet which plaintiff himself says he could see. Other witnesses say they saw much farther, as much as 300 feet or more, but we are taking the strongest testimony in favor of plaintiff. If then the train was in plain view of plaintiff while he crept forward this thirteen feet, the rule laid down in Klein v. Railroad and other cases applies. The law is that when the vision is unobstructed and you look or say you looked and say that you do not see an object when the object is there your statement in that regard cannot be accepted as evidence. You are bound to see what may be seen. That is the law.

The second count of the declaration relies on the failure of the defendant to observe the statutory precautions. As to this there is a conflict of evidence. The plaintiff testified that there was no headlight on the engine and that no whistle was blown or bell rung. Henry Allen, walking west facing the train and therefore in position to see and hear, did not see any headlight or hear any whistle or bell. On cross-examination, he says the whistle was blown after the accident. E. L. Thrash, another witness for plaintiff, was in position to hear and did not hear either whistle or bell. On cross-examination, he is almost positive that the whistle did not blow but does not know about the bell. We take it he still means to say he did not hear the bell. L. C. Dowdy, witness for defendant, testified that he heard the whistle blow sometime before the train reached the crossing. He does not say the whistle blew after plaintiff's automobile appeared within striking distance of the track. He had signed a statement just after the accident to the effect that there was no headlight burning on the engine. He did not hear any bell.

The engineer and fireman testify that all statutory requirements were complied with; that the headlight was on, the automatic bell was ringing, the whistle was blown. Two disinterested witnesses for the defendant say they saw the headlight after the accident. It

might of course have been turned on after the accident. It is contended for the defendant that even if there was no headlight on it was not dark enough for it to be lighted. Here, however, again there is a conflict of proof. Dowdy said it was not dark enough for a headlight. The plaintiff and others say that it was dark enough. The proof shows that the street lamps were lighted and that the automobiles had their lights on.

In this state of the proof it cannot be said there is no evidence to support the finding that some statutory precaution was not complied with by the defendant. There is conflict in the testimony. The engineer and fireman testify that they kept a lookout and this is not contradicted, but we can see how the jurors as reasonable men could reach the conclusion from the evidence that an efficient lookout was impracticable without the headlight and that the headlight was not turned on. It cannot be said there is no evidence to support the finding that the whistle was not sounded nor the bell rung. Of course here again it may be said there is the same evidence of contributory negligence on the part of the plaintiff as we found when considering the case under the common-law count. But there is this difference. Under that count the contributory negligence is a complete bar to a recovery, but under this count it may go only in mitigation of damages. No doubt the jury reached the verdict just in this way by finding that the defendant had failed to observe some one or more of the statutory precautions and then considering the contributory negligence of the plaintiff in mitigation of damages.

Counsel for the defendant railroad company cite and rely upon the case of Morris Klein v. The I. C. R. R. Co., recently decided by this court in an opinion by Judge Owen and also upon a number of New York cases. Chamberlin v. Railroad, 238 N. Y., 233; Cassiday v. Forda, 200 App. Div. (N. Y.), 241; Barry v. Rutland, 203 App. Div. (N. Y.) 287; Fijdowski v. Canal Co., 168 N. Y., 500; Dolfini v. Erie R. R. Co., 178 N. Y., 1; Hagglund v. Erie R. R. Co., 210 N. Y., 46; Legoy v. Railroad, 231 N. Y., 191.

The cases are conclusive in favor of the defendant under the first count for damages by reason of common-law negligence but they do not apply to the second count based upon a failure to observe the statutory precautions. They are all cases in which the plaintiff's contributory negligence was a complete bar to recovery and not cases where it could merely go in mitigation of damages. These cases all lay down the rule that where as in this case it is clear, taking the evidence most strongly in favor of the plaintiff, that he could have seen if he had looked, that as a matter of law he will be taken not to have looked, and therefore guilty of contributory negligence, but as said before they are all cases where this negligence was a complete bar to recovery and do not meet the question under the second count

in this case where under the charge of the court the jury were justified in considering the contributory negligence of the plaintiff merely in mitigation of damages. It results that the assignments of error are overruled and the judgment of the lower court is affirmed.

Owen and Senter, JJ., concur.