## Grebe et al. *v.* Kligerman, Appellant.

Argued December 8, 1932. Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

62

*A. T. Porteous,* of *Axelroth & Porteous,* for appellant. —Defendant's negligence was not the proximate cause of plaintiff's injuries: King v. R. R., 245 Pa. 25.

The evidence that minor plaintiff's internal condition was due to the accident was insufficient to warrant submission to the jury: McCrosson v. P. R. T., 283 Pa. 492, 495; Mudano v. P. R. T., 289 Pa. 51.

*Robert M. Bernstein,* for appellees.—Defendant was negligent: Anderson v. Wood, 264 Pa. 98.

The proximate cause of the accident was not the movement of the parked car: Bruggeman v. York, 259 Pa. 94; Kosson v. Power Co., 293 Pa. 131.

There was sufficient evidence that the displacement of the plaintiff's internal organ was due to the accident: McMinis v. P. R. T., 288 Pa. 377; Curry v. Willson, 301 Pa. 467.

OPINION BY MR. JUSTICE MAXEY, January 3, 1933:

This was an action in trespass by parent plaintiffs in their own behalf and in behalf of their daughter, the minor plaintiff, for damages resulting from injuries sustained by the latter.

The trial of this action resulted in a verdict in behalf of the minor plaintiff in the sum of $5,000 and in behalf of her parents in the sum of $2,974. Defendant moved for judgment non obstante veredicto and for a new trial. Both motions were refused. Defendant took an exception to the refusal of the motion for judgment non obstante veredicto and appealed the case to this court.

At 8 a. m., on April 1, 1931, the minor plaintiff, Kathryn Grebe, then 19 years of age, was crossing Seventh Street, Philadelphia, from the east to the west side at a

point about midway between Cayuga and Wingohocking Streets, and south of the latter street. There was a slight rainfall at the time, and Miss Grebe was carrying an unopened umbrella under her arm. Before starting across the street she saw defendant's automobile coming down Seventh Street toward Wingohocking Street, and it had almost reached the north side of the latter street. After she had gotten about half way across Seventh Street, defendant's car had about reached the south side of Wingohocking Street. After she had gone a few feet further, a car that she had previously not noticed, and which was parked on the west side of Seventh Street about ten or fifteen feet north of her line of travel, suddenly started toward that line. She waited for it to pass. While so waiting, defendant's car continued to come toward her. After the other car passed, she noticed defendant's car was nearer, and she screamed and tried to get to the west curb, but defendant's car struck her before she reached it.

On behalf of defendant it was testified that the minor plaintiff had not been seen by himself or his wife who was a passenger in the car, prior to the accident. Defendant testified that when he reached a point about 150 feet beyond Wingohocking Street, he noticed an umbrella right on the hood, just above the hub cap, and thinking the wind blew it there, he immediately stopped the car, got out and saw the minor plaintiff lying against the curb. He lifted her up and with assistance carried her into his car and took her to the hospital.

Plaintiff had received numerous injuries. They consisted of a bruise and contusion to her right leg, concussion of the brain, a compound fracture of the middle humerus and severe laceration of her lower lip. Several of her teeth were knocked out. She also suffered a fracture of the upper gum, severe contusions of the chest and left hip, and contusion of the left knee, a sprain of the left thumb and abdominal injuries. At the time of the trial she was still walking with a limp. She was in

the hospital twenty-five days following the accident and after leaving the hospital she was confined to her home continuously from the 26th of April, 1931, to the 2d of June, 1931. The evidence in behalf of the plaintiffs was that when the minor plaintiff was crossing the street, defendant's automobile was approaching about 100 feet away at a speed of 20 to 25 miles an hour, and there was no vehicle or other vision-obstructing object between the minor plaintiff and defendant's car. Miss Grebe (the minor plaintiff) said, when she saw defendant's car about sixty feet away, it seemed "to pick up speed," and it struck her as she dashed for the curb. Seventh Street at the place of the accident is 36 feet wide from curb to curb and the sidewalks are twelve feet wide.

There was ample evidence to go to the jury on the question of defendant's negligence. Miss Grebe was in full view of defendant's car for about 150 feet after she started across Seventh Street. The jury was justified in finding that the defendant was negligent and that Miss Grebe was not. In Watts v. Plymouth Boro., 255 Pa. 185, 188, 99 A. 470, this court held: "Pedestrians are not restricted to the use of established street crossings when they attempt to pass from one side of the street to the other. They have a right to cross at whatever point they elect." This court, in Anderson v. Wood, 264 Pa. 98, 107 A. 658, said: "A pedestrian cannot be held to be negligent by the court, as a matter of law, when he attempts to cross a street between the regular crossings, but in exercising this right he must have due regard to the conditions of the traffic before he enters the cart-way...... In the case under consideration, when Anderson, the man who was injured, was seen in the cart-way, the appellant's automobile was more than one hundred feet away from him, approaching on the side of the street Anderson was then crossing. No machine or vehicle was between the driver of the car and the pedestrian; each had an unobstructed view. It was not negligence for Anderson to attempt to cross, and that he did

not use due care after leaving the sidewalk was for defendant to establish, unless it appeared from appellee's evidence. ...... Having, without fault on his part, committed himself to the act of crossing, it became the duty of appellant to so control his car as to do no injury to the pedestrian, who was on the cartway a sufficient length of time to be seen, the driver of the car being far enough away to bring his machine under control. This the driver did not do, and his neglect caused the accident."

Appellant's first contention is that the defendant's negligence was not the proximate cause of plaintiff's injury. Appellant says that this accident "would have never occurred and that she would have safely completed the crossing of Seventh Street were it not for an independent, intervening cause." The "intervening cause" alleged is the parked car which got under way when the minor plaintiff had about half completed the crossing. The appellant has misconceived this case in treating the movement of the so-called "parked car" as an "independent, intervening cause" responsible for the accident complained of. The appellant is assuming that the original wrongful act in this case was the act of the operator of the parked car in starting it when the minor plaintiff was half way across the street. There is shown no connection between the parked car and defendant's car. The operation of the latter car was in no respect controlled or influenced by the operation of the former car. The only effect of the action of the parked car was to impede the minor plaintiff's passage across the street. It is true that if this passage had not been thus impeded, she might not have been struck by defendant's car, but that fact does not excuse defendant's negligence. If there had been no parked car in the street and if the minor plaintiff had been equally delayed in crossing the street by some one engaging her in conversation on the sidewalk before crossing the street, it would have been equally as logical for the appellant to argue that such

person's conversation was the proximate cause of the injury. The proximate cause of Miss Grebe's injury in this case was the negligence of defendant in running her down when she was in plain view. Why she was delayed in reaching the west curb is no concern of his. She was lawfully in the street, and it was defendant's duty under the circumstances shown so to operate his car as not to injure her. In Hoag v. Lake Shore & Mich. South. R. R. Co., 85 Pa. 293, 298, this court, in an opinion by Mr. Justice PAXSON, said: "In determining what is proximate cause, the true rule is, that the injury must be the natural and probable consequence of the negligence—such a consequence as, under the surrounding circumstances of the case, might and ought to have been foreseen by the wrongdoer as likely to flow from his act." There is not the slightest evidence that the starting of the parked car was an act of negligence or that defendant's negligence was in the slightest degree consequential upon that starting.

How can it be argued that the operator of the parked car might have anticipated that by starting his car and delaying the passage of the minor plaintiff, the defendant who was then 150 feet away, would come down the street and run into the minor plaintiff? Even if such an anticipation might have been reasonable, that would in no degree excuse the defendant's negligence. If the driver of the parked car was negligent and that negligence contributed to the minor plaintiff's injury, he and the defendant would both be tort-feasors. "Any number of causes and effects may intervene between the first wrongful cause and the final injurious consequence, and if they are such as might, with reasonable diligence, have been foreseen, the last result, as well as the first and every intermediate result, is to be considered in law as the proximate result of the first wrongful cause:" Atchison, etc., R. R. Co. v. Stanford, 12 Kan. 354, 377, quoted in Welser et al. v. United Gas Imp. Co., 304 Pa. 227, 155 A. 561.

In Bruggeman v. York, 259 Pa. 94, 102 A. 415, this court said: "A prior and remote cause cannot be made the basis of an action if such remote cause did nothing more than furnish the condition or give rise to the occasion by which the injury was made possible if there intervened between such prior or remote cause and the injury a distinct, successive, unrelated and efficient cause of the injury."

Appellant also stresses the argument that there was no sufficient causal connection established between the testified-to displacement of one of the minor plaintiff's internal organs and this accident. It is not disputed that the physician called as a witness in behalf of the plaintiff was an expert in the branch of pathology which embraced the ills afflicting the minor plaintiff, attributed by her to the accident, and which constituted the main item of her claim for damages. This physician witness testified in answer to a hypothetical question that "the accident must necessarily have been the cause of" the condition described by the minor plaintiff, i. e., a retroversion of one of her organs. This testimony taken with the testimony of the minor plaintiff's as to the normal condition of herself before the accident and as to her abnormal condition subsequent thereto was sufficient to sustain a finding that there was a causal relation between the accident and the ill effects she complained of.

Appellant devotes a considerable part of his argument to an attack upon "expert testimony" and invites the court "for its own enlightenment to make inquiry of reputable medical practitioners who are expert in this field" so that information may be obtained to discredit plaintiff's medical testimony, and appellant offers "to rest his case as to this particular question upon the consensus of opinion among such physicians." Obviously this case must be decided on the record testimony. The credibility and weight of the testimony was for the jury. The jury has spoken in its verdict.

The court below in discharging the rules for respectively a new trial and judgment for defendant n. o. v. declared that the verdict of $5,000 in favor of Miss Grebe was "moderate" and the verdict of $2,974 in favor of her parents was "not excessive." This court said in Herb et ux. v. Hallowell, 304 Pa. 128, 139, 154 A. 582: "As to whether or not the verdict was excessive, the trial judge is always in a much better position to determine that than we are, for he has the opportunity to see the witnesses and to hear their testimony."

The judgments in favor of plaintiffs are affirmed.