# DE ROSSETT et al. v. MALONE et al.—239 S. W. (2d) 366.

Western Section. November 30, 1950.

Petition for Certiorari denied by Supreme Court, March 9, 1951.

452

454

458

Emmett W. Braden, Walter P. Armstrong, Jr., and Albert F. Johns, all of Memphis, for plaintiffs in error.

John R. Gilliland and Charles G. Black, both of Memphis, for defendants in error.

ANDERSON, P. J. The original plaintiff, Mrs. Malone, brought this action against the defendants, Robert A. DeRossett, Jr., and Robert A. DeRossett, to recover damages for personal injuries sustained by her when, while attempting to cross a street in Memphis at a point between intersections, she was struck by an automobile driven by the defendant, Robert A. DeRossett, Jr., and owned by the defendant, Robert A. DeRossett. In a separate count her husband sought to recover for medical expenses incurred in the treatment of his wife and loss of her services. The case was submitted to the jury, who returned a verdict in favor of both plaintiffs, awarding Mrs. Malone $6,000.00 as damages, and Mr. Malone, $1,200.00. The judge overruled a motion for a new trial filed on behalf of Mrs. Malone, and entered a judgment in her favor for the amount of the verdict. In the case of Mr. Malone, he suggested a remittitur of $600.00 which being accepted, judgment was entered in his favor in the amount of $600.00. The verdict of the jury was in all other respects approved by the judge.

The sole contention is that the plaintiff, Mrs. Malone, was guilty of proximate contributory negligence as a matter of law, and therefore the defendant's motion for a directed verdict should have been sustained. The judge's approval of the verdict upon the issue of liability requires that this contention be disposed of upon a consideration of the evidence in the light most favorable to the verdict.

The declaration alleged that on August 23, 1948, about 10 o'clock p. m., the plaintiff, Mrs. Malone, while attempting to cross from the south to the north side of Lamar Boulevard, a short distance west of its intersection with Bellevue Street, was struck by the automobile driven by the defendant, Robert A. DeRossett, Jr., and owned by the defendant, Robert A. DeRossett, which vehicle was proceeding westwardly on Lamar Boulevard. The first count charged common law negligence on the part of the driver of the vehicle in that he was driving at a dangerous and reckless rate of speed; was not keeping a proper lookout ahead; and did not use all reasonable means to avoid a collision when he saw or by the exercise of reasonable care should have seen that a collision was imminent.

The second count charged that the car was being operated in violation of Section 816 of the City Ordinance prohibiting reckless driving, and of Section 871 prohibiting any vehicle from driving at a greater rate of speed than 30 miles per hour.

The defendant filed pleas of the general issue and contributory negligence, and in addition averred that the plaintiff, Mrs. Malone, was guilty of violating Section 2687(c) of the Code of Tennessee and sub-sections A and B of Section 871 of the Traffic Code of the City of Memphis.

Code Section 2687(c) provides as follows: "Every pedestrian crossing a road, street or highway within a business or residential district at any point other than a pedestrian crossing, crosswalk, or intersection, shall yield the right of way to vehicles upon such road, street or highway."

Sub-sections A and B of Section 871 of the City Traffic Code provides as follows:

"Sec. 871—Crossing at Other Than Crosswalks—(a) Every pedestrian crossing a roadway at a point other than within a marked crosswalk, or within an unmarked crosswalk at an intersection, shall yield the right-of-way to all vehicles upon the roadway.

"(b) Between adjacent intersections at which traffic control signals are in operation, pedestrians shall not cross at any place except in a marked crosswalk."

Plaintiffs filed a replication denying that Mrs. Malone was guilty of contributory negligence, and relying upon subsection C of Section 871 of the Traffic Code, which provides as follows: "(c) Notwithstanding the provisions of this section, every driver of a vehicle shall exercise due care to avoid colliding with any pedestrian upon any roadway, and shall exercise proper precaution upon observing any child or confused or incapacitated person upon a roadway."

■■ It seems to have been conceded below and here that the above quoted subsection B of Section 871 is not applicable because there was no evidence to show that traffic control signals were in operation at both the intersections between which the accident occurred. But Code Section 2687(c) and sub-section A of Section 871 of the Traffic Code are applicable.

Bellevue Street runs north and south and intersects Lamar Boulevard, which runs in a general east and west

direction but more precisely in a southeasterly and north-westerly direction. The intersection of Bellevue and Lamar is irregular in that another street, Minna Place, running east and west, lies south of Lamar and enters into Bellevue from the west, but does not cross, thus making a five-way intersection. Traffic at the intersection is controlled by an overhead traffic light approximately in the center of the intersection.

Lamar Boulevard is approximately 60 feet wide from curb to curb and accommodates four lanes of traffic. However, it is marked only by a white line in the center. The width of Bellevue is not shown.

There is a small shed for the accommodation of bus passengers situated on the southwest corner of the intersection. On the northwest corner there is a drug store fronting both on Bellevue and Lamar. Immediately west of the west side of the drug store there is an alleyway and immediately west of the alley is a small restaurant known as The Southerner. At the time she was struck, Mrs. Malone was attempting to cross Lamar Boulevard for the purpose of getting a cup of coffee at this restaurant.

Mrs. Malone left her home at 957 Lamar Avenue about 9:45 p. m. and proceeded by city bus to the intersection of Lamar and Bellevue which she reached about 10 o'clock p. m. She alighted from the bus at the southwest corner of the intersection. After so doing, she crossed Bellevue and Minna Place to the southeast corner of the intersection, where she intended to board another bus to go north on Bellevue. After standing there for a few minutes, she re-crossed to the southwest corner, having decided there was sufficient time before catching the other bus to procure a cup of coffee at The Southerner Cafe,

located as aforesaid on the north side of Lamar, 120 feet west of the west line of the intersection.

When Mrs. Malone returned to the southwest corner of the intersection, she observed that the traffic control signal over the intersection of Lamar and Bellevue was green for the east and westbound traffic on Lamar. She realized that in order to get a cup of coffee at the cafe across the street and also catch the next northbound bus on Bellevue, she would have to hurry, and in order to save time, instead of waiting for the traffic light to change and using the walkway provided for pedestrians at the intersection, she proceeded west, along the south side of Lamar until the traffic light turned from green to red for east and westbound traffic on that thoroughfare. That occurred when she reached a point a few feet west of the carshed on the south side of Lamar west of Bellevue. At this point, she stepped off of the south curb of Lamar into the street and started to walk across that thoroughfare at a northwesterly angle toward the Cafe. She proceeded without stopping until she was struck by the left side of the front of the automobile. The collision occurred when she had arrived at a point four to six feet north of the center line of Lamar.

The record leaves it uncertain as to how far west of the intersection Mrs. Malone was when she was struck. The only evidence directly upon the point was the testimony of one of the defendant's witnesses who was a passenger in the defendant's car. He estimated the distance to be 150 feet west of the intersection. Whether he meant the west line of the intersection or the center of it he did not say. The defendant introduced a civil engineer who, having made several measurements at the scene, made a plat which was introduced in evidence. It shows the distance between the number of points and the

engineer testified with respect to others. But the distance from the intersection to the point where the plaintiff was struck by the car does not appear either from the plat or his evidence. He did testify however, that by actual measurement it was exactly 120 feet from the west line of the intersection to the Southerner Cafe on the north side of Lamar.

It appears to be conceded that when she was struck, Mrs. Malone was proceeding at a northwesterly angle from a point a few feet west of the carshed on the south side of Lamar to the Southerner Cafe on the north side. Thus it appeared reasonably certain that the collision occurred somewhat east of the Southerner Cafe, but just how far was not shown. Therefore the estimate of the defendant's witness that it was 150 feet from the intersection to the point of the collision is unreliable unless his testimony referred either to the center of the intersection or the east side of it.

At the time of the accident, McClure, a witness for the plaintiff, was seated in an automobile headed west and parked in front of the Southerner Café. He did not see the car strike Mrs. Malone but he heard the noise incident thereto and immediately looked in that direction. He saw Mrs. Malone lying in the street three or four feet north of the center and saw the automobile proceeding west at a rate of speed which he estimated at ''30 miles an hour or better.''

The defendant testified that when Mrs. Malone loomed up in front of his car an instant before the impact, he applied his brakes and attempted to swerve the car to avoid striking her, but evidence for the plaintiffs was that the car proceeded after the impact for a distance of 150 feet before it was brought to a stop. It was to

this interval that the witness McClure referred when he said the car was going 30 miles per hour.

There were three passengers in the car with the driver, DeRossett, Jr. One was seated in the front seat, two in the rear. They had been traveling west on Lamar for a considerable distance before they reached the intersection with Bellevue. As already said, the defendant driver testified that he did not see Mrs. Malone until the instant before the impact when she "loomed up" in front of his car.

The boy on the front seat was turned sideways, facing south, with one leg resting on the seat and his arm resting on the back of the seat. He saw Mrs. Malone, "not over five seconds" before the impact, and when she was about two feet south of the center line. He said she was coming across the street "at a sort of a trot", that when he saw her he yelled, "Look out!" and that the driver immediately applied his brakes and attempted to swerve the car to avoid striking her.

The defendant's car was being followed by another driven by Mrs. Gilbert. She was about 60 feet to the rear. She testified, as did all of the occupants of the DeRossett car, that the light was green when her car and defendant's car passed through the intersection. Mrs. Gilbert said that she was "the last one under the light", meaning that hers was the last car to cross the intersection before the light changed to red for traffic on Lamar.

She testified that when she first saw Mrs. Malone, the latter was about six feet south of the center line and was proceeding "in a running walk"; that "she ran in front of the car and the car struck her"; that after the impact she was "lying like this with her feet on the white line".

The area in the vicinity of the accident was well lighted. There were neon lights on the restaurant and on the drug store at the northwest corner of the intersection. There were also street lights at the intersection and on Lamar Boulevard, near the point of impact. Mrs. Malone was dressed in navy blue slacks and a light colored blouse. One of her acquaintances who was a passenger on a bus which passed the scene immediately after the accident, recognized Mrs. Malone as she lay on the pavement.

As said, Mrs. Malone testified that before stepping off the curb and starting across the street, she observed that the traffic light had changed from green to red for traffic on Lamar. She also testified that she looked in both directions and no traffic was in sight which would interfere with her crossing the street. She said that as she progressed in her journey across the street she continued to look for approaching traffic and saw none; that the last time she looked was just a "few seconds" before she crossed the center line, and no automobile was in sight.

██ Upon the question of contributory negligence the plaintiffs first contend that the driver of the car was guilty of gross negligence and hence that negligence on the part of Mrs. Malone could not in any event bar a recovery. This insistence is based primarily upon the fact that the driver of the car ran the red light at the intersection. If we assume this to be true, we think a finding of gross negligence not justified. If all of the facts and circumstances of a particular case justify the conclusion that a motorist's disregard of a traffic signal is willful, as distinguished from inadvertent, in the sense that he was consciously indifferent to the rights of others and wittingly ignored the signal, knowing that it would likely result in injury to another or his property, then

it may be that a finding of gross negligence would be justified. But the evidence in the present record makes no such case.

Here, the question of contributory negligence must be determined by the rule that negligence on the part of a plaintiff which contributes as a proximate cause of the injuries is a bar to an action for damages for such injuries.

In a number of cases we have dealt with the relative rights and duties of motorists and pedestrians using the streets of a municipality. Some of these are: Elmore v. Thompson, 14 Tenn. App. 78; Phillips-Buttorff v. Mc-Alexander, 15 Tenn. App. 618; and Jordan v. Finger, 19 Tenn. App. 365, 89 S. W. (2d) 183; Tri-State Transit Co. v. Duffey, 27 Tenn. App. 731, 173 S. W. (2d) 706; Western Union Tel. Co. v. Dixon, 27 Tenn. App. 752, 173 S. W. (2d) 714; Zamora v. Shappley, 27 Tenn. App. 768, 173 S. W. (2d) 721.

The rule to the effect that the duty of a traveler crossing a railroad track at a grade crossing to look and listen is fixed and absolute, and a failure to conform thereto is contributory negligence which will bar a recovery for injuries sustained as a result of being struck by an engine or train, does not apply to pedestrians injured by an automobile while crossing a street or highway. Tri-State Transit Co. v. Duffey, supra, and cases cited.

In the absence of a restrictive statute or ordinance, a pedestrian has a legal right to use any portion of the street or highway and to cross it at any point either directly or diagonally. No more is required than that he exercise ordinary care for his own safety, which may include keeping a reasonable lookout for passing vehicles in order to avoid injury therefrom, for the nature and extent of the precautions required by ordinary

care, necessarily depend upon the particular circumstances of each case. The pedestrian's failure to keep a lookout may constitute negligence per se, although it will not necessarily do so under all circumstances. 5 Am. Jur. 761, Sec. 454; note, 164 A. L. R. 103; cf. Hodge v. Hamilton, 155 Tenn. 403, 293 S. W. 752. This, because, as said, there is no imperative and invariable requirement as to looking and listening, as is the case at railroad crossings. 61 C. J. S., Motor Vehicles, Sections 470, 471, pp. 43, 60. 25 Am. Jur. 523, 524.

However, it is insisted that sub-section A of Section 871, providing that every pedestrian crossing a roadway at any point other than within a marked cross-walk or within an unmarked crosswalk at an intersection shall yield the right-of-way to all vehicles upon the road, and Code Section 2687(c) to the same effect, are applicable and controlling.

Taken literally, this provision of the ordinance would apply whenever a pedestrian knew or had reason to know that an automobile was on the roadway, however distant from the point at which he was attempting to cross. But obviously this is not the meaning of the ordinance or the statute. They can mean no more than that such a crossing pedestrian must yield the right-of-way whenever ordinary care requires that he do so in order to avoid collision with an approaching vehicle. As is true in other conduct regulated by that standard, what ordinary care requires in such a situation must depend upon the immediate circumstances of the particular case.

This is illustrated by the cases of Tri-State Transit Co. v. Duffey, supra, and Western Union Tel. Union v. Dixon, supra, where we held that the question was one for the jury; and Zamora v. Shappley, supra, where we held it to be a question for the court. The

rationale of these decisions is that in the last mentioned there was no room for a difference of opinion among reasonable minds as to what ordinary care required under the particular circumstances, whereas in the first two the contrary was true.

■ As pointed out in these cases, particularly in Zamora v. Shappley, the fact that the pedestrian may or may not have the right-of-way is a factor to be considered along with all the other circumstances of the particular case in determining the nature and extent of the precautions for his own safety which ordinary care requires of him.

■ ■ So also while the fact that an approaching motorist has the right-of-way may have a bearing on what is required of him by ordinary care, he is not relieved from the duty of exercising due care not to injure others who may be crossing the street. He must anticipate the presence of pedestrians not only at street crossings but between street intersections and must exercise due care to avoid injuring them. Duling v. Burnett, 22 Tenn. App. 522, 534, 124 S. W. (2d) 294, and authorities cited; Ivy v. Marx, 205 Ala. 60, 87 So. 813, 14 A. L. R. 1173; 60 C. J. S., Motor Vehicles, Section 389-B, p. 951.

We are referred by the defendants to the case of Harbor v. Wallace, 31 Tenn. App. 1, 211 S. W. (2d) 172, as supporting their contention. In that case, plaintiff, having alighted from a bus which had stopped on a highway, ran around it and started across the thoroughfare. While so doing, she ran into the side of the defendant's automobile, which was in plain sight. We held that the determinative question was ruled by Stafford v. Consolidated Bus Lines, 179 Tenn. 185, 164 S. W. (2d) 15, and accordingly sustained a directed verdict for the defendant on the ground that the plaintiff's injuries

"were caused by her independent, intervening act of running from behind the bus into the highway without any precaution for her own safety." [31 Tenn. App. 1, 211 S. W. (2d) 175.]

It appeared that the plaintiff's eyesight was good, that her view was unobstructed and that the automobile of the defendant was within range of her vision. We accordingly declined to accept the plaintiff's testimony that as she started across the highway she looked both ways for traffic and saw none. In support of this holding we quoted a passage from the West Virginia case of Yoder v. Charleston Transit Co., 119 W. Va. 61, 192 S. E. 349, 352, and it is this passage which the defendant invokes in the present case. It is as follows: "If a pedestrian looks for approaching automobiles before attempting to cross a street or highway, he is presumed in law to have seen what he should have seen had his observance been careful and attentive. He cannot justify himself by saying that he looked and did not see the approaching car that injured him, when, if he had looked, he must have seen the car. Unless there is some circumstance or condition to excuse him, his failure to see the car constitutes negligence as a matter of law." See also, Reid v. Owens, 98 Utah 50, 93 P. (2d) 680, 126 A. L. R. 55.

We said we thought this was a sound proposition of law, as applied to the facts and we still think so. A similar ruling to the effect that one is held to have seen what could have been seen by the exercise of ordinary care, has been made by the Supreme Court with respect to a traveler about to cross a railroad crossing. This was done in the case of Chambliss v. L. & N. R. Co., from the law docket of Haywood County, unreported opinion by Green, Chief Justice, filed June 23, 1923. See also,

Klein v. Illinois C. R. Co., 4 Tenn. App. 563; Louisville & N. R. Co. v. May, 5 Tenn. App. 100. Consult, 61 C. J. S., Motor Vehicles, Section 471-c, p. 63.

■ The rationale of the rule is that testimony by one whose vision is unimpaired and whose view is unobstructed, that he looked and did not see what was clearly within his range of vision, and must in the nature of things have been seen, is contrary to the physical facts and cannot be accepted as evidence. Chambliss v. Louisville & N. R. Co., supra. We are satisfied that this is sound and its application is not confined to railroad crossings, as is the rule that it is a fixed and absolute duty of one about to cross the tracks to look and listen before doing so.

■ ■ But conceding the soundness of the rule as a general proposition, its application and its effect depend upon the particular circumstances. As said, the failure of a pedestrian crossing the street to see an approaching automobile does not always constitute negligence as a matter of law. 61 C. J. S., Motor Vehicles, Section 471-c, p. 63, 25 Am. Jur. 523, Sec. 227. The rule invoked cannot be applied in its full vigor if there be any circumstances or condition which can be regarded as a reasonable ground for excusing the failure to see the approaching vehicle; 61 C. J. S., Motor Vehicles, Section 471-c, pp. 63 and 64, and, in the last analysis, that is the question upon the phase of the case presently being considered.

■ ■ It is common knowledge based upon everyday experience that a pedestrian crossing a street, particularly between intersections, does not stare in one direction or the other for the purpose of taking in all the details of a scene. Ordinarily there is neither time nor opportunity for such scrutiny. Such looking as he

does necessarily consists of glances in first one direction and then another, depending upon the direction from which traffic is to be expected, as he proceeds across the thoroughfare, and that is what Mrs. Malone says she did. If a glance discloses that a traffic light is against traffic in an area of the street he is about to enter, it cannot be said, we think, that his failure to see a car approaching the light with the signal against it, is so far contrary to the physical facts that it cannot be accepted as evidence; for it reasonably could be found that the concentration of attention on the traffic signal and the apparent assurance of safety furnished by it would excuse a failure to see the approaching vehicle, and especially is this true, where, as here, the traffic light is over the center of the intersection and, as is commonly known, hangs a considerable distance above the top of an automobile.

 It is also a well-known fact that everything within the range of perception of a human being does not register on his consciousness. Thus it is said to be recognized "that reasonably effective use of the powers of observation may be made, and yet the presence of (an approaching) vehicle not disclosed". Goldenberg v. Reggio, 112 N. J. L. 440, 171 A. 677, 678; Puorro v. Salerno, 109 N. J. L. 381, 162 A. 527. What does register on the consciousness depends not altogether but to a substantial degree upon what is in his mind at the time and especially upon what he is looking for upon the particular occasion. When a pedestrian crossing a thoroughfare looks to his right and his left, he does so primarily for the purpose of determining not whether there is a vehicle or vehicles in sight, but whether he can safely cross before the arrival of any vehicle that may be approaching. His attention is not centered so much on the actual

physical presence of a vehicle but upon his chances of crossing safely. If he sees that which can reasonably be regarded as an apparent assurance that his passage will not be jeopardized by an approaching automobile, the fact that one or more were actually within the range of his vision may not register on his consciousness at all and he may be excused from giving the situation that concentration of attention whereby details of the scene would be ascertained. In such cases the question is *ordinarily* for a jury; not for the court to determine as a matter of law.

In the present case it is not controverted that when Mrs. Malone stepped off the curb and proceeded across the street, there was no moving traffic in sight in either direction except the defendants' car and possibly that of Mrs. Gilbert about 60 feet to the rear. In any view of the evidence, both of these cars at that time may have been a considerable distance east of the intersection.

We have no choice but to accept Mrs. Malone's testimony that she looked at the traffic light as she stepped off of the curb and also just before she reached the center of the street, and that on each occasion it was red. This being so, and having regard to everyday experience, the jury could have found that her attention was so far centered on the traffic light that she did not notice the defendant's car which, it also could have been found, was at that time either entering or approaching the intersection. Hence when properly analyzed in the light of the facts which must be regarded as having been established by the jury verdict, the defendant's contention upon this phase of the case necessarily is that even though Mrs. Malone did look to the east upon the occasions mentioned and did see the traffic light and observed

that it was red, the fact that she did not also see the defendant's automobile makes her testimony contrary to the physical facts and hence unacceptable as evidence. We cannot agree. Under the particular facts of this case whether the plaintiff was guilty of negligence in failing to make more effective use of her sense of sight was one for the jury. Cf. Duling v. Burnett, 22 Tenn. App. 522, 533, 124 S. W. (2d) 294; Moeller v. St. Paul City R. Co., 218 Minn. 353, 16 N. W. (2d) 209, 156 A. L. R. 371.

Supporting analogies are to be found in the decisions in Tenn. Central R. Co. v. Gilbert, 131 Tenn. 201, 174 S. W. 812, and Southern R. Co. v. Penley, 175 Tenn. 380, 134 S. W. (2d) 177, which establish an exception to the general rule to the effect that it is the positive, fixed duty of a traveler at a grade crossing at a railroad to look and listen for approaching trains, and a failure to do either is negligence as a matter of law barring a recovery in an action grounded on common law negligence for damages for injuries sustained when the traveler is struck by a train or engine. The exception is that where the railroad customarily maintains a watchman, that fact being known to the traveler, and the watchman is away from his post of duty and fails to signal the approach of trains, or where there is an automatic signaling device which fails to work and give such a signal, the absence of the watchman or the failure of the signaling device, as the case may be, "may have some effect to blunt the edge of caution and therefore toward relieving the traveler from contributory negligence", and make it a question for the jury to say whether he was justified under all the circumstances in relying upon the flagman's absence or the failure of the signaling device; that is, that the extent to which he is entitled to solely rely and to be

excused from further looking or listening is a matter for the jury. See also, Nashville C. & St. L. R. Co. v. White, 158 Tenn. 407, 15 S. W. (2d) 1. Cf. Railway Express Agency v. Little, 3 Cir., 50 F. (2d) 59, 75 A. L. R. 963, and note.

A different ruling on this particular issue might be required were we not bound to accept Mrs. Malone's testimony to the effect that she did look to both the west and east for approaching traffic before stepping off of the curb and as she went across the south half of the street, and observed that the traffic light was red.

But even if we were to hold that under the rule invoked by the defendant, Mrs. Malone's testimony that she looked to the east and saw no automobile was not acceptable as evidence because contrary to the physical facts and hence that this phase of the issue must be determined as if she did not look at all and was therefore guilty of negligence, (the view taken in Chambliss v. R. R., supra), this still would not determine the matter, for before such negligent conduct would bar a recovery it would have to appear that it not only contributed to her injuries but that it contributed thereto as a proximate cause and not as a remote cause or mere condition. Phillips-Buttorff Mfg. Co. v. McAlexander, supra; and Duling v. Burnett, supra; Holt v. Walsh, 180 Tenn. 307, 174 S. W. (2d) 657; Standridge v. Godsey, 189 Tenn. 522, 533, 226 S. W. (2d) 277.

It will be observed that in the same section of the City ordinance requiring that a pedestrian crossing at a point other than within a marked crosswalk shall yield the right-of-way to all vehicles upon the roadway, there is to be found the provision pleaded by the plaintiffs in their replication to the defendants' pleas to the effect that notwithstanding the preceding provisions of that section

of the ordinance, every driver of a vehicle shall exercise due care to avoid colliding with any pedestrian upon the roadway.

■■ This proviso is merely declaratory of the common law. Phillips-Buttorff v. McAlexander, supra. Obviously, therefore, the driver of an automobile cannot successfully plead that a pedestrian failed to yield the right-of-way as required by the ordinance if the driver's carelessness was the proximate cause of the injury to the pedestrian and the omission of the latter only a remote cause. Ibid. Cf. Standridge v. Godsey, 189 Tenn. 522, 523, 226 S. W. (2d) 277.

■ A familiar statement of the rule of proximate cause is: "The proximate cause of an injury may, in general, be stated to be that act or omission which immediately causes or fails to prevent the injury; an act or omission occurring or concurring with another, which had it not happened, the injury would not have been inflicted". Deming & Co. v. Merchants Cotton Press, etc., Co., 90 Tenn. 306, 353, 17 S. W. 89, 99, 13 L. R. A. 1518; Elmore v. Thompson, 14 Tenn. App. 78; Tri-State Transit Co. v. Duffey, 27 Tenn. App. 731, 173 S. W. (2d) 706; Western Union Telegraph Co. v. Dixon, 27 Tenn. App. 752, 173 S. W. (2d) 714.

■■ The proximate cause is not necessarily that it is next or last in time or place, but that it is a procuring, efficient and predominant cause. Closeness in causal relation, rather, is the meaning. The "remote cause" of an injury is "that which may have happened and yet no injuries have occurred notwithstanding that no injury could have occurred if it had not happened". Ibid.

■ In determining the issue of proximate cause, to apply the rule invoked by the defendants would be no more than to charge Mrs. Malone with having seen the

defendants' automobile as she crossed the south side of the street and before she reached the center. Yoder v. Charleston etc. Transit Co., supra; Reid v. Owen, supra. But, as already indicated, accepting the plaintiff's testimony as true, the jury could have found also that the traffic signal was at that time red for traffic on Lamar and the defendant's car was at some point east of the light, either in the intersection or approaching it. Upon these facts, considered with the other evidence favorable to the plaintiffs, it could have been found that the driver of the car violated the traffic signal, and that had he not done so and had he kept a proper lookout ahead, he would have seen Mrs. Malone in time to have avoided the injury notwithstanding that she may have been negligent in failing to keep a more vigilant lookout for vehicles approaching from the east.

A similar result was reached in Phillips-Buttorff Mfg. Co. v. McAlexander, supra, and also in Elmore v. Thompson, supra.

The determinative facts of the former case are very much like those of the present one with the exception that there was no traffic light involved. There, a pedestrian was struck by an automobile while crossing a city street between intersections in violation of a municipal ordinance, which, contrary to the ordinance here applicable, positively prohibited such use of the streets. This was held to be negligence per se; but there was evidence that the automobile which struck the plaintiff was being driven at a rate of speed in violation of the city ordinance and also in violation of the provision of another ordinance requiring vehicles to keep as near the right hand curb as possible. In these circumstances it was held that the question of whether the plaintiff's

negligence in violating the city ordinance contributed as a proximate cause of her injuries, was one for the jury.

Cf. Elmore v. Thompson, supra; Crowl v. West Coast Steel Co., 109 Wash. 426, 186 P. 866; Wadley v. Dooly, 138 Ga. 275, 75 S. E. 153; Grebe v. Kligerman, 310 Pa. 60, 164 A. 796.

The defendant makes an argument based upon the estimated distance and mathematical calculations with reference to the rate of speed, and the distance the automobile must have traveled if the plaintiff's testimony be accepted. It is insisted that the automobile must have covered a distance of approximately 150 feet in the time it took the plaintiff to cover six, and therefore defendant's automobile must have been traveling at a speed 25 times that of plaintiff.

The evidence fails to furnish a satisfactory basis for this contention. Among other things, as already pointed out, there is no satisfactory evidence in the record as to how far it was from the intersection or any point therein, to the point of where the accident occurred. The speed of the automobile was no more than an estimate of the witnesses whose opinion ranged from 20 to 35 miles an hour, and as said, there was substantial evidence to the effect that the car went from 125 to 150 feet after it struck Mrs. Malone before it was brought to a stop, notwithstanding that the defendant testified that he put on his brakes an instant before the impact.

Mathematical calculations, properly based, are of course conclusive. But when drawn from mere estimates of time and distance they cannot be utilized to turn a question of fact into one of law for the court. It is a matter of common knowledge that such estimates are only approximations. Their accuracy varies and depends in a large measure upon the particular individual

who is testifying. They are frequently expressed, especially estimates of time, with little exactness. Such estimates are proper matters to be considered and weighed by the jury in the light of common sense and experience. But they do not furnish a safe guide for an appellate court to determine an issue as a matter of law; nor do mathematical calculations based thereon. Cf. Duling v. Burnett, 22 Tenn. App. 522, 530, et seq., 124 S. W. (2d) 294.

█ It must be conceded that to accept Mrs. Malone's version of how this accident occurred it is to record a rather unusual sequence of events. But we are unable to say that it was a physical impossibility for it to have occurred in the way described by her. The fact that it is highly improbable that it did occur as she testified it did, does not authorize a court of review to reject her version of the accident. Mack v. Hugger Bros. Construction Co., 10 Tenn. App. 402.

The defendant assigns error on the action of the judge in refusing to give in his charge the following special instructions: "Gentlemen, I charge you that if a pedestrian looks for approaching automobiles before attempting to cross a street or highway, he is presumed in law to have seen what he should have seen had his observance been careful and attentive. He cannot justify himself by saying that he looked and did not see the approaching car that injured him, when if he had looked, he must have seen the car. Unless there is some circumstance or condition to excuse him, his failure to see the car constituted negligence as a matter of law."

█ This instruction is taken verbatim from Harbor v. Wallace, supra, and we have already indicated our adherence to it as a sound proposition of law. The instruction might well have been given in the present case.

But under the prevailing view with respect to the effect of the Act of 1911, Chapter 32, carried into the Code at Section 10654, it is not sufficient that the failure to grant the request may have affected the result. It must affirmatively appear that it did in fact do so. Thomason v. Trentham, 178 Tenn. 37, 154 S. W. (2d) 792, 138 A. L. R. 461; Hime v. Sullivan, 188 Tenn. 605, 221 S. W. (2d) 893.

When there is such an affirmative showing is not always an easy question. But in the present case we think the requisite showing does not appear, for, as we have pointed out, the jury could have found the controverted issue in favor of the plaintiff even though they found that she saw the automobile or was chargeable with having seen it before she reached the center of the street.

The result is, the judgment is affirmed at the cost of the plaintiffs-in-error.

Baptist and Swepston, JJ., concur.